William WOODFORD, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 20S00–0007–CR–395.

Supreme Court of Indiana.

Aug. 3, 2001.

SULLIVAN, Justice.

Defendant William Woodford was convicted of possessing in excess of three grams of cocaine with intent to deliver after nine rocks were discovered in a stolen truck in which he had been riding. We affirm, finding the drugs were discovered in a permissible inventory search of the truck and sufficient evidence that the weight of the cocaine seized exceeded three grams.

*Background*

The facts most favorable to the judgment indicate that in the early morning hours on December 24, 1999, Officer Sawyer stopped a truck for a faulty light above the license plate and for failing to stop at a stop sign. As the truck pulled over, Officer Sawyer observed the passenger reach underneath the passenger seat. There were two occupants in the truck: Stephen Brooks (the driver) and Defendant William Woodford (the passenger).

Officer Sawyer asked Brooks for his driver's license and vehicle registration. Brooks gave the officer his identification, but said that he could not find the registration. Defendant offered an explanation that the truck was owned by his friend, "Mike." [1] Officer Sawyer asked Defendant for his identification, but Defendant gave the officer an out-of-state driver's license and a triple A card both belonging to one Marvin Allen. The officer noticed that the age and picture portrayed on the out-of-state license did not match Defendant's characteristics.

Officer Sawyer returned to his patrol car to run a check on the license plate number and discovered that one James Frame was the owner of the truck. The officer also found that the Marvin Allen,

Michael S. Greene, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

---

1. During this time, Officer Sawyer smelled alcohol emanating from the truck. Defendant showed the officer an open beer bottle and explained that it had spilled in the truck.

described on the driver's license given by Defendant, had a warrant out for his arrest. At that point, Sergeant Randy Kantner arrived at the scene. Officer Sawyer conveyed to Sergeant Kantner that he suspected the truck was stolen.

Officer Sawyer returned to the truck and questioned Brooks about the owner, but Brooks claimed that he did not know and that he was driving it for Defendant. Officer Sawyer placed Brooks in the police car until he could verify the true owner. Meanwhile, Sergeant Kantner recognized Defendant as "William Woodford," and Defendant confirmed his true identity. Officer Sawyer then arrested Defendant for false informing. Officer Sawyer also ran a background check on Defendant and discovered that Defendant had an outstanding warrant for possession of cocaine. Brooks and Defendant were transported to the police station for investigation.

After Officer Sawyer was unable to verify the true owner of the truck at the scene, he took the truck into police custody. At the Goshen police station, Officer Sawyer continued his efforts to find the true owner, but was unsuccessful. At that point, Officer Sawyer decided to impound the vehicle and perform an inventory search pursuant to standard Goshen Police Department policy. Under the passenger's seat, Officer Sawyer discovered nine individually wrapped pieces of a controlled substance later identified as 3.2 grams of crack cocaine. The officer also found a baggy containing what was later determined to be .04 grams of heroin. At some point, Officer Sawyer received a stolen vehicle report from Elkhart City Police Department that matched the pickup truck in which Defendant was arrested.

The State charged Defendant with Possession of Cocaine in Excess of Three Grams With Intent to Deliver, a Class A Felony,[2] Possession of Heroin, a Class D Felony,[3] and with being a Habitual Offender.[4] On January 27, 2000, Defendant filed a motion to suppress the cocaine evidence, but the trial court denied the motion. The jury found Defendant guilty on all counts. The trial court sentenced Defendant to three years for possession of heroin and 40 years for dealing in cocaine, both to be served concurrently. The trial court then enhanced the sentence by 30 years for the habitual offender determination, which was to be served consecutively with the dealing in cocaine sentence. Defendant was sentenced to a total of 70 years in prison.

*Discussion*

I

Defendant contends that the trial court erred when it denied his motion to suppress cocaine evidence discovered during an alleged unlawful inventory search. He argues that the evidence was the fruit of an illegal impoundment, and therefore it should have been suppressed.

■ The Fourth Amendment[5] protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Mapp v. Ohio,* 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Gener-

---

**2.** Ind.Code § 35–48–4–1(b)(1) (1998).

**3.** *Id.* § 35–48–4–6.

**4.** *Id.* § 35–50–2–8 (1998).

**5.** The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

ally, the Fourth Amendment prohibits warrantless searches and seizures. *See Trowbridge v. State,* 717 N.E.2d 138, 143 (Ind.1999), *reh'g denied.* When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *See Berry v. State,* 704 N.E.2d 462, 465 (Ind.1998) (citing *Brown v. State,* 691 N.E.2d 438, 443 (Ind.1998)). One well-recognized exception to the warrant requirement is an inventory search of a vehicle. *See Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Fair v. State,* 627 N.E.2d 427, 431 (Ind.1993).

■ In determining the propriety of an inventory search, the threshold question is whether the impoundment itself was proper. *See Fair,* 627 N.E.2d at 430. An impoundment is warranted when it is part of "routine administrative caretaking functions" of the police, *see Opperman,* 428 U.S. at 370 n. 5, 96 S.Ct. 3092, or when it is authorized by state statute, *see Goliday v. State,* 708 N.E.2d 4, 7 (Ind.1999); *see, e.g.,* Ind.Code § 9–18–2–43 (1998). To prove a valid inventory search under the community caretaking function, the State must demonstrate that: (1) "the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing," and (2) "the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation." [6] *Fair,* 627 N.E.2d at 433.

■ In this case, Officer Sawyer's justification for taking the truck into police custody was that he suspected that it was stolen. His belief was based on the fact that Defendant presented false identification and Defendant claimed that the truck belonged to an individual named "Mike" yet the check on the plate number revealed that the owner's name was James Frame. Officer Sawyer and Sergeant Kantner repeatedly questioned both Defendant and Brooks regarding the true identity of the owner, but to no avail. Indeed, both Defendant and Brooks's lawful possession of the pickup truck was in doubt. The decision to impound was made after the ownership of the truck could not be verified [7] and after Defendant had been lawfully arrested for false informing. The stolen vehicle report on the pickup truck, which was received later that day, confirms that the arresting officer's decision to impound the truck was reasonable under the circumstances. We find that the arresting officer's decision to impound the pickup truck was justified. *See Opperman,* 428 U.S. at 369, 96 S.Ct. 3092 (noting that one caretaking function justifying impoundment is when the "police ... attempt to determine whether a vehicle has

---

6. In *United States v. Cooley,* the court observed that the Seventh Circuit has implicitly rejected the *Fair* analysis that impoundment is justified where the vehicle itself is imperiled. 119 F.Supp.2d 824, 827 (N.D.Ind.2000) (discussing *United States v. Duguay,* 93 F.3d 346 (7th Cir.1996) ("While protection of the arrestee's property and municipal liability are both valid reasons to conduct an inventory *after* a legal impoundment, they do not establish the *a priori* legitimacy of the seizure.") (emphasis added)). We adhere to our reasoning in *Fair.*

7. Officer Sawyer testified at trial, "In the past, sometimes we've towed vehicles from the scene not knowing who they belonged to and then the owner has to pay for that expense. If we drive it down to the station, and try to get a hold of the people that own it, sometimes they'll just come and get it and saves them expense and headache." (R. at 335.)

been stolen...."); *see also Vehorn v. State*, 717 N.E.2d 869, 875 (Ind.1999) (ruling that impoundment was justified where the defendant-driver was arrested for carrying a concealed weapon in a vehicle that was reported stolen); *Fair*, 627 N.E.2d at 433 (recognizing that the community caretaking function is implicated where ownership of the vehicle cannot be established) (citing *United States v. Young*, 825 F.2d 60, 61 (5th Cir.1987), *cert. denied*, 485 U.S. 1012, 108 S.Ct. 1483, 99 L.Ed.2d 711 (1988), and *Madison v. United States*, 512 A.2d 279 (D.C.1986)).

■ Next, we must determine whether the scope of the inventory search was lawful. To pass constitutional muster, the search itself must be performed pursuant to standard police procedures. *See Vehorn*, 717 N.E.2d at 875 (citing *Fair*, 627 N.E.2d at 435) (citing in turn *Bertine*, 479 U.S. at 375, 107 S.Ct. 738). In this case, Officer Sawyer testified that when he conducted the inventory search, he followed written department policy. Officer Sawyer testified that while performing the inventory search, he "opened the passenger side door" and in plain view, he saw a "clear plastic baggie" containing a "rock-like substance" which appeared to be cocaine located underneath the passenger seat. (R. at 237–38, 339.) Officer Sawyer testified further that in plain view, he observed a folded dollar bill and inside found a "white powder substance," identified as heroin. (R. at 238, 341.) Officer Sawyer listed all items in the inventory form, not just the incriminating evidence. Pursuant to standard departmental policy, the officer completed and signed a standard inventory form.

Because the Goshen police officers were justified in impounding the pickup truck and followed standard operating procedures, the inventory search was reason-able. The trial court properly denied Defendant's motion to suppress.

## II

Defendant contends that there was insufficient evidence to sustain his conviction for dealing in cocaine because the State failed to meet its burden showing that "the weight of the cocaine was three grams or over." Appellant's Br. at 14.

In order to obtain a conviction on this charge as a Class B Felony, the State must prove beyond a reasonable doubt that the defendant (1) possessed cocaine (2) with intent to deliver. *See* Ind.Code § 35–48–4–1(a)(2); *Lampkins v. State*, 682 N.E.2d 1268, 1274–75 (Ind.1997). The conviction is elevated to a Class A Felony if the State proves beyond a reasonable doubt that the amount of cocaine possessed weighed three grams or more. *See id.* § 35–48–4–1(b)(1).

■ When reviewing a sufficiency of the evidence claim, this Court neither reweighs the evidence nor assesses the credibility of the witnesses. *See Brasher v. State*, 746 N.E.2d 71, 72 (Ind.2001). We only consider the evidence most favorable to the jury's verdict, along with all reasonable inferences to be drawn therefrom, and will affirm a conviction if the probative evidence and reasonable inferences drawn from the evidence could have led the jury to find a defendant guilty beyond a reasonable doubt. *See Chambliss v. State*, 746 N.E.2d 73, 77 (Ind.2001).

■ As discussed in Part I *supra*, a lawful inventory search of the pickup truck led to the discovery of nine individually wrapped rocks of what Officer Sawyer believed to be cocaine underneath the passenger seat. At trial, forensic scientist specializing in drug analysis Jill McBride testified that she randomly selected two of the rocks and that this representative sam-

ple tested positive for cocaine. McBride did not test the remaining seven rocks. She testified that all nine rocks were "consistent in color, dryness, and wetness," which generally shows that they are all the same substance. (R. at 493.) It is an undisputed fact that one tested rock crack weighed .33 grams, and the other weighed .43 grams. It is also undisputed that the total weight of the nine rocks equaled 3.21 grams.

On appeal, Defendant does not challenge the element of possession under Indiana Code § 35–48–4–1(a)(2). Rather, he contends that because the forensic scientist only tested two of the nine rocks seized, an amount totaling only .76 grams of cocaine, the State did not meet its burden that the amount of cocaine was over three grams as required by Indiana Code § 35–48–4–1(b)(1). Defendant argues that her testimony was "insufficient to establish that the seven untested rocks were cocaine," Appellant's Br. at 14, thus there was insufficient evidence to convict him of dealing in cocaine.

For a dealing in cocaine conviction, this Court has said, " 'The total weight of the delivered drug and not its pure component is to be considered in prosecutions.' " *Riley v. State*, 711 N.E.2d 489, 493 (Ind.1999) (upholding a dealing in cocaine conviction in an amount of three grams or more where the lab technician performed a sample tested positive for cocaine-one group of packages weighed 10.15 grams, and the other group weighed 6.21 grams) (quoting *Tobias v. State*, 479 N.E.2d 508, 511 (Ind. 1985), *reh'g denied.*); *see also Evans v. State*, 566 N.E.2d 1037, 1042 (Ind.Ct.App. 1991) (rejecting the defendant's argument that there was insufficient evidence in dealing in cocaine in the amount of three grams or more because the lab technician did not test each individual rock cocaine). Here, it is undisputed that the total weight of the nine rocks equaled 3.21 grams, and the two-rock sample from this group tested positive for cocaine. As such, the testing of a representative sample consisting of two rocks of cocaine was sufficient for Defendant's dealing in cocaine conviction. Because it is within the jury's province to assess the credibility of all witnesses and weigh the evidence, we will not reassess or reweigh on review the evidence it heard. The evidence was ample to support the jury's verdict.

*Conclusion*

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.