Marvin TAYLOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A04–0310–CR–528.

Court of Appeals of Indiana.

July 20, 2004.

Publication Ordered Aug. 4, 2004.

Transfer Granted Oct. 19, 2004.

**1052**

Marshelle Dawkins Broadwell, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Marvin Taylor, brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence discovered during an inventory search of his automobile.

We affirm.

The record reveals that shortly after midnight on August 7, 2001, Officer Patrick McPherson of the Indianapolis Police Department was on duty on the east side of Indianapolis when he observed an automobile turn from East 38th Street north into the Parkwood Apartments.[1] The driver of the automobile, later identified as Taylor, failed to use his turn signal, which caused Officer McPherson to initiate a traffic stop. Taylor made a couple of quick turns, eventually parking the car diagonally to the curb of a parking lot in the apartment complex. After stopping Taylor, Officer McPherson learned through the Bureau of Motor Vehicles that Taylor was driving with a suspended license. Officer McPherson decided to tow Taylor's vehicle because he was "illegally parked[,] he was driving while suspended[, and] [h]e did not reside in the apartment complex...." Transcript at 13. Another policeman, Officer Stevenson, did an inventory search of the vehicle and discovered under the driver's seat two baggies containing what was later determined to be cocaine.

On August 8, 2001, the State charged Taylor with one count of possession of cocaine in an amount greater than three

---

1. Officer McPherson also worked as a security officer for the apartment complex.

grams, a Class C felony.[2] On April 1, 2003, the State filed an amended information adding a count of dealing in cocaine in an amount greater than three grams, a Class A felony.[3] On June 11, 2003, Taylor filed a motion seeking to suppress the evidence seized from his vehicle, claiming that the inventory search was improper. The trial court held a hearing on this motion on July 25, 2003. Officer McPherson was the only witness at the hearing. On August 22, 2003, the trial court entered a ruling denying Taylor's motion to suppress, which reads in relevant part:

"The Court FINDS that the towing of the vehicle was proper. The driver could not legally drive the vehicle away. It was parked on private property in a manner the [sic] reduce[d] the number of parking spots available to visitors to the apartment complex. The defendant was not a resident of the apartment complex. The officer also worked security for the apartment complex. The towing of the car was a reasonable act by the officer under the totality of the circumstances. Since the towing of the car was proper, the inventory was proper." Appendix at 101.

On September 12, 2003, Taylor filed a petition for the trial court to certify its ruling for interlocutory appeal, which the trial court granted on September 17, 2003. (A–102, 104). On October 31, 2003, this court accepted jurisdiction of the interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

■ Upon appeal from a trial court's ruling upon a motion to suppress, our review is somewhat similar to that used upon review of a claim of insufficient evidence; we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Crabtree v. State,* 762 N.E.2d 241, 244 (Ind.Ct.App. 2002). However, we must also consider the uncontested evidence most favorable to the defendant. *Id.*

■ Upon appeal, Taylor claims that the search of his car violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Taylor does cite and discuss the differences between search and seizure jurisprudence in Indiana and federal law, concluding that "it would seem without question [that] the Indiana Constitution provides an even higher standard of protection . . . ." Appellant's Br. at 8. Whether Taylor's conclusion is correct or not,[4] the State claims that Taylor has waived any claim under the State Constitution in that he has failed to argue that the analysis or result would be different than that reached by the Federal Constitution. We also note that Taylor made no mention of the Indiana Constitution in his motion to suppress. Whether Taylor has preserved any claim under the Indiana

---

2. *See* Ind.Code § 35–48–4–6(b)(1) (Burns Code Ed. Supp.2003).

3. *See* Ind.Code § 35–48–4–1(b)(1) (Burns Code Ed. Supp.2003).

4. *Compare* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights,* 22 IND. L.REV. 575 (1989) (stating that the rights afforded to individuals pursuant to the Indiana Constitution stand separate and distinct from those conferred by the U.S. Constitution and the former has been held to provide greater protections against unreasonable search and seizures than its federal counterpart) *with* Jon Laramore, *Indiana Constitutional Developments: The Wind Shifts,* 36 IND. L.REV. 961 (2003) (concluding that the Indiana Constitution has not been the source of significant protections of individual rights, and although the Indiana Supreme Court has developed some different modes of analysis, individual rights under the Indiana Constitution are only marginally different than under the Federal Constitution).

Constitution is beside the point, because in the context of inventory searches, the ultimate standard dictated by the Fourth Amendment and Article 1, Section 11 is the reasonableness of the police conduct. *Peete v. State,* 678 N.E.2d 415, 419 (Ind.Ct. App.1997), *trans. denied.*

■ Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect against unreasonable searches and seizures and, as a general rule, require a judicially issued search warrant as a condition precedent to a lawful search. *Gibson v. State,* 733 N.E.2d 945, 951 (Ind.Ct.App. 2000). When a warrantless search has been conducted, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Woodford v. State,* 752 N.E.2d 1278, 1281 (Ind.2001), *cert. denied,* 535 U.S. 999, 122 S.Ct. 1564, 152 L.Ed.2d 486 (2002).

■ One well-recognized exception to the warrant requirement is an inventory search of a vehicle. *Id.* The threshold question in determining whether an inventory search was proper is whether the impoundment of the vehicle itself was proper; then it must be determined if the scope of the inventory search was proper. *Id.* at 1281–82. Impoundment is warranted when part of routine administrative caretaking functions of the police or when it is authorized by state statute. *Id.* at 1281. Here, there is no allegation by the State that the impoundment was authorized by state statute. Thus, the search must be justified under the "community caretaking" functions of the police. To prove a valid inventory search under the caretaking function, the State must demonstrate: (1) that the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and (2) that the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation. *Id.*

■ Two primary factors should be considered in determining whether the conclusion that vehicles constitute a hazard is reasonable in light of objective standards of sound policing. *Fair v. State,* 627 N.E.2d 427, 434 (Ind.1993). The first is the degree to which the property upon which the vehicle is situated was under the defendant's control.[5] *Id.* Second, the length of time the impounding officer perceived the car would be unattended is important because this helps assess the reasonableness of the officer's conclusion that the vehicle, if left alone, would be exposed to an unacceptable risk of theft or vandalism. *Id.* Courts should be mindful that the Fourth Amendment does not necessarily require police to utilize the least intrusive means to secure and protect an automobile. *Id.* at 433. Thus, the question is not whether there was an absolute need to dispose of the vehicle, but whether the decision to do so was reasonable in light of the applicable standard. *Id.*

The needs of the community have been held to be implicated where: (1) the arrest of the driver has left his car unattended on a highway, (2) the owner of the vehicle cannot be located, or (3) the vehicle is on private property and the owner of the private property has requested removal. *See id.; Gibson,* 733 N.E.2d at 957.

■ In the case at bar, Taylor focuses his attack on the propriety of the impound-

---

**5.** As stated by the *Fair* Court, clearly there is a difference between a vehicle left in the driveway of a defendant's parent's home and one left in a small lot intended for unloading air cargo.

ment itself, claiming that the reasons given by Officer McPherson did not justify impounding his vehicle.[6] At the suppression hearing, Officer McPherson testified that one of the reasons he impounded Taylor's car was that Taylor was driving while suspended. Depending upon the surrounding circumstances and the driver's status, driving while suspended can be a Class A infraction, a Class A misdemeanor, or a Class D felony. *See* Ind.Code § 9–24–19–1 (Burns Code Ed. Supp.2003) (Class A infraction); Ind.Code § 9–24–19–2 (Burns Code Ed. Supp.2003) (Class A misdemeanor); Ind.Code § 9–24–19–3 (Burns Code Ed. Supp.2003) (Class A misdemeanor); Ind.Code § 9–30–10–16 (Burns Code Ed. Supp.2003) (Class D felony). Here, it is not apparent from the record under which section Taylor was cited. The charging instruments make no mention of a charge for driving while suspended. Officer McPherson testified at the suppression hearing that he "learned through the Bureau of Motor Vehicles, IPD via communication that [Taylor] was driving while suspended infraction on the learner's permit." Tr. at 13. From this, it is unclear whether the infraction referred to occurred at a prior time or whether it referred to the instant situation. In his brief, when referring to the driving while suspended charge, Taylor cites to I.C. § 9–24–19–2, which defines a Class A misdemeanor. Regardless, the fact remains that when he was pulled over, Taylor did not have a valid driver's license.

Taylor claims that, based on the minor nature of the offense of driving while suspended, that it was "very likely" that he would have been released on his own recognizance or given a minimal bond and able to reclaim his car. Taylor claims that

his situation was similar to that in *Gibson, supra,* where the sole basis for the defendant Gibson's arrest was his failure to appear for a charge of fishing without a license, a Class C infraction. 733 N.E.2d at 957. Thus, the court observed that there was a likelihood that Gibson would have been released on his own recognizance or on a nominal bond within a brief time after his arrest and could have reclaimed his car. *Id.* at 957–58. The court noted that Gibson's vehicle was parked in the parking lot of a convenience store and that he was not given an opportunity to telephone a relative or a friend to retrieve the vehicle. *Id.* at 957. The court further observed that Gibson's lawful possession of the van was not in question and that there was no unqualified driver, such as one without a valid driver's license, in whose possession the van would have been left if the police did not impound the vehicle. *Id.* The court concluded that there was no evidence to establish that Gibson's vehicle constituted a potential hazard from which the police felt justified in impounding the vehicle. *Id.* at 958.

Similarly, in *Fair, supra,* the vehicle in question was undamaged and parked in a relatively secure private parking facility and there had been no complaint from the owners of the property. 627 N.E.2d at 433. The *Fair* Court also noted that there was no unqualified driver in whose possession the car would have been left had the police not impounded it and that the defendant's lawful possession of the car was not in question. *Id.* The defendant was charged with public intoxication and too would likely have been released on his own recognizance or on a nominal bond within a brief time and been able to reclaim the car. *Id.* at 435. The Court held that

---

6. An impoundment may be effected by police at the scene and does not depend upon having the vehicle towed or otherwise physically moved from its location. *See Fair,* 627 N.E.2d 427; *Gibson,* 733 N.E.2d 945.

there was little evidence of record to establish that the vehicle constituted a potential hazard. *Id.* However, the Court clarified its holding thusly:

"we do not mean to be understood as saying that it would never be reasonable to tow an arrestee's neatly parked vehicle from private property in the absence of a complaint from the owner. Rather, it is the case that on facts such as these, the State's burden is not met solely by the introduction of an officer's generalized assertion that he has a duty to safeguard the vehicles of those with whom he comes into contact. We would probably indulge the reasonableness of this impoundment but for the indicia of pretext which litter the record of this 'inventorying' and the absence of evidence about any departmental procedures against which we might evaluate their significance." *Id.* (footnote omitted).

The case before us, although similar in some ways to the facts present in *Gibson* and *Fair,* is distinguishable from these cases in several respects. First, despite the comments in *Gibson* regarding the police not affording the defendant the opportunity to arrange for someone else to claim the car, such is not required. *See Fair,* 627 N.E.2d at 433 (no requirement to use least intrusive means to secure and protect automobile; the question is not whether there was absolute need to impound vehicle but whether the decision to do so was

reasonable); *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) ("reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure."). More importantly, unlike in either *Gibson* or *Fair,* here Taylor was an unqualified driver; his driving permit was suspended. Although it is unclear whether Taylor was arrested or simply given a citation for driving while suspended before his car was towed, the fact remains that in either case he would not have been able to lawfully reenter his car and drive away. Too, despite Taylor's assertions to the contrary, the written policy of the Indianapolis Police Department clearly authorizes the towing of a vehicle "in which the driver or a passenger does not have a valid driver's license."[7] App. at 96. There is no indication that anyone but Taylor was in the vehicle.

In short, Officer McPherson was faced with a driver who was not lawfully permitted to drive. Whether he was arrested or merely cited, Taylor could have quickly returned to drive his vehicle and again been in violation of the law. Even though Taylor could have been given the chance to make arrangements to properly take care of the vehicle, given the circumstances we are unable to say that the decision to impound the car was unreasonable.[8] *See*

---

7. *See* footnote 6, *supra.* Nevertheless, Taylor concedes that this case does not involve a review of the "soundness of the standard operating procedures of the Indianapolis Police Department regarding towing vehicles...." Appellant's Br. at 15 n. 5.

8. As one commentator has noted, a federal court has held that "if the driver is only ticketed but cannot himself operate the car because of an expired license, impoundment of the vehicle is improper unless the driver is

'unable to provide for its custody and removal.'" 3 WAYNE R. LaFAVE, SEARCH & SEIZURE § 7.3(c) (3rd ed.1996) (quoting *United States v. Ibarra,* 955 F.2d 1405, 1408 (10th Cir. 1992)). However, two of the reasons given in *Ibarra* to support upholding the District Court's decision to suppress the evidence seized as a result of the search in that case were that the defendant was never given an opportunity to provide for custody and control of his car and that the state statute did not authorize towing in such circumstances.

*United States v. Stephens,* 350 F.3d 778 (8th Cir.2003) (search of automobile was reasonable under Fourth Amendment as inventory search where defendant was arrested for driving without valid license so that he could not continue to operate vehicle, making it appropriate for police to take immediate possession of and secure vehicle).

Because we have determined that one of the reasons given by Officer McPherson did warrant impoundment, we need not address the other reasons given by McPherson.

The judgment of the trial court is affirmed.

VAIDIK, J., and MAY, J., concur.

### ORDER

On July 20, 2004, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Verified Motion for Publication of Memorandum Decision. The Appellee states the decision clarifies existing law and therefore meets the criteria for publication as set out in Appellate Rule 65(A). The Appellee asks the Court to publish the decision handed down on July 20, 2004.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED and this court's opinion heretofore handed down in this cause on July 20, 2004, marked Memorandum Decision,

Not for Publication in now ORDERED PUBLISHED.

*Ibarra,* 955 F.2d at 1409–10. Similar reasoning was rejected by the United States Supreme Court in *Bertine,* wherein the Court held that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." 479 U.S. at 374, 107 S.Ct. 738. The Indiana Supreme Court in *Fair* not only declined to require the least intrusive means to secure and protect the vehicle, but also held that an impoundment will not be invalidated solely because such was not specifically authorized by state statute. 627 N.E.2d at 432.