ATTORNEY FOR APPELLANT
Marshelle Dawkins Broadwell
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S04-0410-CR-457

MARVIN TAYLOR,

*Appellant (Plaintiff below),*

v.

STATE OF INDIANA,

*Appellee (Defendants below).*

_____

Appeal from the Marion Superior Court, Criminal Division 20, No. 49G20-0108-CF-163624
The Honorable William Young, Judge
The Honorable Michael Jensen, Magistrate

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-0310-CR-528

_____

**February 14, 2006**

**Rucker, Justice.**

Defendant Marvin Taylor filed an interlocutory appeal challenging the trial court's denial of his motion to suppress cocaine seized as the result of an inventory search of his car. Concluding the inventory search was impermissible we reverse the judgment of the trial court.

**Fact and Procedural History**

Shortly after midnight on August 7, 2001, Indianapolis Police Officer Patrick McPherson observed a car pull into a gated apartment complex. The driver of the car, later identified as Marvin Taylor, did not use his turn signal. To initiate a traffic stop, Officer McPherson activated his emergency lights. After making two quick right-hand turns Taylor pulled his car diagonally against a curb in the complex parking lot. Officer McPherson "jumped out of [his] vehicle" and was joined shortly thereafter by another policeman, an Officer Stevenson. Tr. at 12. After obtaining Taylor's information, Officer McPherson learned through the Bureau of Motor Vehicles that "[Taylor] was driving while suspended infraction on the learner's permit." Tr. at 13.[1] At that point Officer McPherson decided to have Taylor's car towed away because "the vehicle was illegally parked[,] he was driving while suspended[, and] [h]e did not reside in the apartment complex . . . ." Id. In the meantime Officer Stevenson proceeded to conduct a purported inventory search of the vehicle and discovered two plastic baggies containing what was later identified as cocaine.

On August 8, 2001, the State charged Taylor with one count of possession of cocaine in an amount greater than three grams, a Class C felony in violation of Ind. Code § 35-48-4-6(b)(1). Thereafter, on April 1, 2003, the State filed an amended information adding an additional count of dealing in cocaine in an amount greater than three grams, a Class A felony in violation of Ind. Code § 35-48-4-1(b)(1). Prior to trial Taylor filed a motion to suppress the cocaine evidence discovered during the inventory search of his car. Following an evidentiary hearing, the trial court denied the motion. Upon Taylor's request the trial court certified its order for interlocutory appeal, and the Court of Appeals accepted jurisdiction. Taylor argued the trial court erred in

---

[1] Because he was driving on a learner's permit Taylor was required to be "accompanied in the vehicle by an individual who holds a valid operator's, chauffeur's, or public passenger chauffeur's license." Ind. Code § 9-24-7-4. Apparently he was not so accompanied. However Taylor was not cited for this violation.

denying his motion because the search of his car violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Suggesting that Taylor may have waived his Indiana Constitutional claim, the Court of Appeals addressed his Fourth Amendment claim only. See Taylor v. State, 812 N.E.2d 1051, 1053-54 (Ind. Ct. App. 2002) ("Whether Taylor has preserved any claim under the Indiana Constitution is beside the point, because in the context of inventory searches, the ultimate standard dictated by the Fourth Amendment and Article 1, Section 11 is the reasonableness of the police conduct."). Ultimately the Court of Appeals affirmed the judgment of the trial court. Having previously granted transfer, we now reverse the trial court's judgment.

## Discussion

### I.

Taylor contends the trial court erred in denying his motion to suppress because the evidence seized was the fruit of an illegal search. The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. Amend. IV; Berry v. State, 704 N.E.2d 462, 464-65 (Ind. 1998) (citing Mapp v. Ohio, 367 U.S. 643, 650 (1961)). The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. Ybarra v. Illinois, 444 U.S. 85, 91 (1979). For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. Berry, 704 N.E.2d at 465. The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. Fair v. State, 627 N.E.2d 427, 430 (Ind. 1993).

A valid inventory search is a well-recognized exception to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 372 (1976); Fair, 627 N.E.2d at 431. The underlying rationale for the inventory exception is three-fold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. Gibson v. State, 733 N.E.2d 945, 956 (Ind. Ct. App. 2000) (citation

3

omitted).  In determining the propriety of an inventory search, the threshold question is whether the impoundment itself was proper.  Woodford v. State, 752 N.E.2d 1278, 1281 (Ind. 2001).  An impoundment is warranted when it is part of "routine administrative caretaking functions" of the police or when it is authorized by statute.  Id. (quoting Opperman, 428 U.S. at 370 n.5).  To prove a valid inventory search under the community caretaking function, the State must demonstrate the following: (1) "the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing," and (2) "the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation."  Fair, 627 N.E.2d at 433.

The State makes no claim that impoundment of Taylor's car was authorized by statute.  Rather the State presses its claim based on the officers' community caretaking function.  In that regard the State first contends that Officer McPherson was justified in towing Taylor's car because it was illegally parked.  We initially observe that it is not entirely clear from the record whether Taylor's car was in fact parked illegally.  We know that when Taylor pulled his vehicle over he parked "caddy corner" to the curb.  Tr. at 12.  Apparently vehicles in the parking lot are typically parked perpendicular to the curb.  Tr. at 13.  And according to Officer McPherson that was not the manner in which Taylor parked his car.  Rather, the car was parked slightly at an angle to the curb.  Appellant's App. at 100.  But Officer McPherson testified during direct examination that parking lines directing drivers which direction to park did not exist in the apartment complex parking area.  Tr. at 12.  When subsequently questioned by the Court on that same point, Officer McPherson testified: "[I]f they [parking lines] are [there,] they're faint at this point.  Two (2) years ago I can't recall how dark they are but I was in there last night if they are they are real faint as of this time."  Tr. at 26.

In any event, assuming Taylor's car was parked illegally, it is not true that every vehicle parked illegally must be impounded.[2]  And that is especially so where the vehicle poses no

---

[2] Ind. Code § 9-21-16-8 authorizes towing of vehicles parked illegally in violation of official signs posted by the Indiana Department of Transportation on a highway where an engineering investigation has revealed the need for a restriction.  Taylor's vehicle was not parked on a highway but on private property.  The police department's towing and impounding procedures specify: "Officers observing a vehicle that is unattended and in violation of any of the provisions of I.C. [§] 9-21-16 may cause the vehicle to be

4

potential hazard to public safety.[3]  Here, Officer McPherson testified that there were relatively few cars parked in the parking area, Tr. at 15, that the vehicle's location did not constitute a public nuisance, Tr. at 25, that the vehicle was on the correct side of the parking lot, Tr. at 20-21, and that the vehicle was parked in a permissible parking area for non-residents.  Tr. at 27.  The record does not establish that Taylor's vehicle constituted a potential hazard to public safety simply because it may have been parked illegally.  See Manalansan v. State, 415 A.2d 308, 311 (Md. Ct. Spec. App. 1980) ("If [defendant's car was illegally parked], there was no showing of why . . . one of the officers could not have moved the automobile, within a few feet and within a few seconds, into a parking space, locked it and left it . . . .  The necessity for impounding the car was not remotely demonstrated.  It is simply not reasonable to tow a car away to avoid moving it to the curb, if such minimal movement was indeed necessary.").  Under the facts presented here, this purported reason for impounding Taylor's car must fail.

The State also argues that police impoundment of Taylor's vehicle was justified because Taylor did not live in any apartment within the complex.  See, e.g., Johnson v. State, 553 N.E.2d 477 (Ind. 1990) (affirming the validity of an inventory search of a car that was impounded from the parking lot of an apartment complex at which the defendant did not reside).  Two primary factors are considered in determining whether the conclusion that a parked vehicle constitutes a hazard is reasonable in light of objective standards of policing.  Fair, 627 N.E.2d at 434.  First is the degree to which the property upon which the vehicle is situated is under the control of the defendant.  Id.  And second is the length of time the impounding officer perceived that the impounded car would be unattended.  This latter factor "helps assess the reasonableness of the officer's conclusion that the vehicle, if left alone, would be exposed to an unacceptable risk of theft or vandalism."  Id.

---

impounded (e.g., obstructing traffic, illegal parking, or blocking an intersection)."  Appellant's App. at 95 (Indianapolis Police Department General Order 9.00).

[3] We also find it ironic that Taylor would be criticized for the manner in which he stopped his car.  Taylor had no duty to park after the officer activated his emergency lights.  Rather, he was obligated to pull over as quickly as possible.  See, e.g., Finney v. State, 786 N.E.2d 764, 766 (Ind. Ct. App. 2003) (defendant charged and convicted of resisting law enforcement as a Class D felony after failing to pull over in re-sponse to police officer activating his emergency lights to initiate a traffic stop).

First, there is nothing in the record indicating that Taylor's vehicle was at risk of harm. Second, the record is silent on whether Taylor was a guest of a resident living in the apartment complex. This point is particularly significant because Taylor's car was parked in an area where a guest would ordinarily park in order to visit a resident. Tr. at 27. And absent evidence that the owner of the apartment complex, or someone on its behalf, would seek to have a guest's car towed from this area,[4] the permissibility of allowing Taylor to leave his car parked at that location "was in the hands of his acquaintances." See Fair, 627 N.E.2d at 435. It is true that Taylor's vehicle was not located at his own home or upon property over which Taylor had control. Nonetheless under the facts presented, merely because Taylor was not a resident of the apartment complex does not support a reasonable belief that the vehicle posed some threat or harm to the community or that the vehicle itself was imperiled.

The State further contends that police impoundment of Taylor's vehicle was justified because Taylor was driving on a suspended license and thus could not be allowed to operate his car further. At the time Officer McPherson decided to impound Taylor's car his best information was that Taylor had committed an infraction.[5] He testified as much: "I learned through the Bureau of Motor Vehicles, IPD via communication that [Taylor] was driving while suspended infraction on the learner's permit." Tr. at 13. Ind. Code § 34-28-5-3 provides, "[w]henever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to: (1) inform the person of the allegation; (2) obtain the person's: (A) name, address, and date of birth; or (B) driver's license, if in the person's possession; and (3) allow the person to execute a notice to appear." See also Peete v. State, 678 N.E.2d 415, 419 (Ind. Ct. App. 1997) (A brief detention is permitted when a police officer believes a person has committed an infraction of an ordinance.).

---

[4] Under Ind. Code §§ 9-22-1-15 to -16, the owner of rental property may have an "abandoned" vehicle towed from the premises upon 72 hours prior notice.

[5] Our colleagues on the Court of Appeals noted that depending upon the surrounding circumstances and the driver's status, driving while suspended can be a Class A infraction, a Class A misdemeanor, or a Class D felony. Taylor, 812 N.E.2d at 1055 (citations omitted). And, as the Court correctly pointed out, it is not apparent from the record under which statute Taylor was cited. Id. We do not disagree with our colleagues' observations. However we are of the view that the relevant inquiry was what Officer McPherson believed at the time of the impoundment.

6

It is certainly the case that Taylor could not be permitted to move his car. And that assumes of course that he would have been obligated to do so as discussed above. But the officers had no authority to arrest Taylor for committing an infraction.[6] Thus, he could and should have been afforded the opportunity to telephone a responsible friend or relative to retrieve his car. See Gibson v. State, 733 N.E.2d 945, 957 (Ind. Ct. App. 2000) (reversing denial of motion to suppress evidence seized as result of an inventory search where police impounded defendant's vehicle because he was unable to drive after his arrest on an outstanding warrant for failing to appear for fishing without a license and noting the vehicle was parked on private property and the defendant "was not given the opportunity to telephone a relative or a friend to retrieve the van").

The fact that Taylor was unable to drive his car because his permit was suspended does not in this instance support a conclusion that the car itself was imperiled or constituted a potential hazard which police Officer McPherson reasonably believed he needed to address. The three factors presented by the police officers in this case, even when taken together, do not show that the impoundment of Taylor's vehicle was warranted as a part of routine police administrative caretaking functions. More specifically we conclude that the State has failed in its burden of demonstrating that the officers' belief that Taylor's vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing. Having reached this conclusion, we need not address whether impoundment of Taylor's car was consistent with established departmental routine or regulation.

---

[6] Indiana law permits a law enforcement officer to arrest without a warrant when he has probable cause to believe the person is committing a misdemeanor in the officer's presence. It does not permit a warrantless "arrest," defined as "the taking of a person into custody, that he may be held to answer for a crime," for an infraction. See I.C. § 35-33-1-1(A)(4) (1996) and I.C. § 35-33-1-5 (1983). See also I.C. § 35-28-5-1 (setting forth the procedure for actions taken under this provision and declaring they "shall be conducted in accordance with the Indiana Rules of Trial Procedure.").

## II.

In addition to claiming a violation of his rights under the United States Constitution, Taylor also asserts a violation of Article I, Section 11 of the Indiana Constitution.[7] Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." Automobiles are among the "effects" protected by Article I, Section 11. Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995). Although Section 11 appears to have been derived from the Fourth Amendment and shares very similar language, we interpret and apply it independently from Fourth Amendment jurisprudence. State v. Bulington, 802 N.E.2d 435, 438 (Ind. 2004). The purpose of Article 1, Section 11 is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994). In determining whether the police behavior was reasonable under Section 11, both trial and appellate courts must consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures. Brown, 653 N.E.2d at 79.

Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. Halsema v. State, 823 N.E.2d 668, 676 (Ind. 2005). In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. Id. We recognize a valid inventory search as an exception to the Article I, Section 11 warrant requirement. Thus the State must show that the search was reasonable in light of the totality of circumstances. Trowbridge v. State, 717 N.E.2d 138, 144 (Ind. 1999). In this case, the factors leading to our conclusion that impounding Taylor's car was not warranted by police administrative caretaking functions support the conclusion that the requirements of the Indiana Constitution were violated as well. In plain terms, considering all of the facts known to the police officers at the moment of impound, it simply was not reasonable for them to believe

---

[7] The State contends Taylor has waived this claim because "he does not argue that the analysis under [the] Indiana Constitution is different in this case or that it leads to a result different from the federal constitution." Br. of Appellee at 3 n.2. In the argument section of his Brief of Appellant, under the heading "Requirements for Warrantless Searches," Taylor devotes one paragraph—consisting of three sentences—to his federal constitutional claim and a page and a half to his state constitutional claim. Br. of Appellant at 6-8. In support Taylor relies exclusively on Indiana precedent. Concluding Taylor has not waived his Indiana Constitutional claim, we now address it.

that consistent with objective standards of sound policing, Taylor's vehicle posed some threat or harm to the community or the vehicle itself was imperiled.

## Conclusion

The State did not carry its burden under either the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution. The judgment of the trial court is therefore reversed and this cause remanded with instructions to grant Taylor's motion to suppress.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.