Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MONTEZ BELMAR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1404-CR-220 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Daniel Pflum, Senior Judge
Cause No. 49G20-1311-FB-74045

**November 18, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Montez Belmar ("Belmar") was convicted in Marion Superior Court of Class C felony possession of cocaine and Class C misdemeanor operating never having received a license. The trial court sentenced Belmar to an aggregate term of three years. Belmar appeals and argues that the trial court erred in admitting evidence obtained during an inventory search of his car.

We affirm.

**Facts and Procedural History**

On November 14, 2013, Officer Aaron Helton ("Officer Helton") of the Indianapolis Metropolitan Police Department ("IMPD") was driving east on New York Street when he observed a sedan fail to stop at the stop sign at the intersection of New York Street and Hamilton Avenue. Officer Helton initiated a traffic stop and the sedan pulled into the gas pump area of a Shell gas station located at the corner of Hamilton and Washington Streets. A license plate check revealed that the car was registered to Belmar, who was later identified as the car's driver. After observing that there were two other male passengers in the car, Officer Helton requested backup.

When IMPD Officer Michael Tharp ("Officer Tharp") arrived at the scene, Officer Helton approached the driver's side of the car and asked for all three men's identifications. Belmar was unable to produce a driver's license, but gave Officer Helton his birth date. After performing a driver's license check, Officer Helton learned that Belmar had never received an Indiana driver's license and that one of the passengers had an outstanding arrest warrant. The third passenger was allowed to leave the scene.

While Officer Helton was running checks on the car's occupants, Officer Tharp watched the car and noticed Belmar slowly moving his closed hand toward the car's center console. Officer Tharp notified Officer Helton of this movement. Officer Helton removed Belmar from the car and placed him under arrest for operating never having received a license. Officer Helton determined that the car would need to be impounded since it was blocking a gas pump and there was no licensed occupant to move it. Pursuant to IMPD's impoundment procedure, he began a brief[1] inventory search of the car.

Near the center console, Officer Helton noticed the end of a plastic baggie protruding from the rubber flap surrounding the emergency brake handle. Officer Helton removed the bag and observed that it contained a powdery substance that he believed to be cocaine. No other items of value were found in the car. A towing company later arrived to tow the car.

On November 20, 2013, the State charged Belmar with Count 1, Class B felony dealing in cocaine; Count 2, Class D felony possession of cocaine; Count 3, Class C misdemeanor operating never having received a license; and Count 4, Class B felony possession of cocaine within 1,000 feet of a public park.

A jury trial was held on February 18, 2014. After jury selection, Belmar made an oral motion to suppress the evidence seized during the inventory search of his car. After hearing argument, the trial court denied the motion. When Officer Helton testified that

---

[1] At trial, Officer Bohan, a third officer at the scene, testified that the inventory search lasted no more than "a minute or two." Tr. p. 200.

he removed a baggie containing cocaine from Belmar's car, Belmar did not object. Belmar later objected to another reference to the cocaine and objected when the cocaine itself was offered into evidence. The trial court overruled both objections. The jury found Belmar guilty of Class D felony possession of cocaine and Class C misdemeanor operating never having received a license.

On March 4, 2014, the trial court sentenced Belmar to concurrent terms of three years for the possession of cocaine conviction and sixty days for the operating never having received a license conviction. Belmar now appeals.

**Discussion and Decision**

Belmar claims that the inventory search of his car violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution, and therefore, the trial court abused its discretion when it admitted the cocaine found during the search into evidence. He contends that the trial court should have excluded the evidence because the impoundment was improper and the search performed by Officer Helton did not comply with IMPD procedures.

A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of an abuse of discretion. Sparkman v. State, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision. Id. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether error in the introduction of evidence affected a

4

defendant's substantial rights, we assess the probable impact of the evidence on the jury. Sparkman, 722 N.E.2d at 1262.

Initially, we note that Belmar failed to raise an objection at trial to Officer Helton's testimony about his discovery of the cocaine. The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the claim of error on appeal. Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000). Because Belmar did not properly preserve this issue for appellate review, he has waived it. Even though Belmar later objected to the admission of the cocaine itself, his subsequent objection did not preserve the issue for review, since pertinent evidence had already been admitted. See Edwards v. State, 730 N.E.2d 1286, 1289 (Ind. Ct. App. 2000).

Waiver notwithstanding, we address Belmar's arguments on the merits.

### A. Fourth Amendment

The Fourth Amendment to the United States Constitution protects persons from unreasonable search and seizure. This protection has been extended to the states through the Fourteenth Amendment to the Unites States Constitution. Mapp v. Ohio, 367 U.S. 643, 650 (1961). The paramount concern of the Fourth Amendment is the reasonableness of the State's intrusion into the privacy of its citizens. Adams v. State, 762 N.E.2d 737, 740 (Ind. 2002). The reasonableness of a search is determined by balancing the degree to which it intrudes upon an individual's privacy with the degree to which it is needed for the promotion of legitimate governmental interests. Lockett v. State, 747 N.E.2d 539, 542 (Ind. 2001). Put another way, the fundamental purpose of the Fourth Amendment "is to protect the legitimate expectations of privacy that citizens possess in their persons,

5

their homes, and their belongings." Taylor v. State, 842 N.E.2d 327, 330 (Ind. 2006). We note that seizures conducted outside the judicial process, without prior approval by a judge or a magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Warner v. State, 773 N.E.2d 239, 245 (Ind. 2002).

A valid inventory search is a well-recognized exception to the warrant requirement. Taylor, 842 N.E.2d at 330. The underlying rationale for the inventory exception is three-fold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. Gibson v. State, 733 N.E.2d 945, 956 (Ind. Ct. App. 2000).

When analyzing the propriety of an inventory search, the threshold question is whether the impoundment itself was proper. Taylor, 842 N.E.2d at 331. An impoundment is warranted when it is part of routine administrative caretaking functions of the police or when it is authorized by statute. Id. To prove a valid inventory search under the community caretaking function, the State must demonstrate the following: (1) the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and (2) the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation. Id. The question is not whether there was an absolute need to dispose of the vehicle, but whether the decision to do so was reasonable in light of the applicable standard. Fair v. State, 627 N.E.2d 427, 433 (Ind. 1993).

6

Belmar argues that "[t]he State presented no evidence that Belmar's car needed to be towed either because it was blocking the gas pumps, posed any threat to public safety or was impeding the normal operation of the gas station in any way." Appellant's Br. at 7. He also argues that Officer Helton failed to follow IMPD procedure when he inventoried Belmar's car. He contends that the inventory search was pretextual and based solely on Officer Tharp's report to Officer Helton that he had seen Belmar moving his hand toward the center console.

We disagree. Officer Helton testified that Belmar's vehicle was blocking other cars' access to at least one of the gas station's pumps and that neither Belmar nor his passengers were able to drive it away. Because Belmar's car was parked on private, commercial property and prevented customers from accessing the gas pumps, it may well have represented a hazard or threat to a community interest. See Berry v. State, 967 N.E.2d 87 (Ind. Ct. App. 2012) (defendant's vehicle, left in a vacuum bay in car wash that customers could have used, arguably represented hazard or threat to a community interest, justifying its impoundment and subsequent inventory search upon discovery that driver's license was suspended and vehicle's insurance status was unknown).

Furthermore, the impoundment of Belmar's car was permissible under IMPD General Order 7.3, which provides that officers may tow and impound vehicles that are "being operated by a non-licensed or suspended driver" or are "owned or operated by person under custodial arrest for any charge." Ex. Vol., Ex. A, p. 21. Here, the vehicle was owned and operated by Belmar, a person who was both non-licensed and, at the time, under custodial arrest. One of his passengers was also arrested on an outstanding warrant

7

and the other passenger was allowed to leave the scene. Therefore, we conclude that the impoundment of Belmar's car was not improper. See United States v. Cartwright, 630 F.3d 610 (7th Cir. 2010) (policy permitted impoundment in present case since defendant's passenger had no driver's license and defendant had been arrested, and, although passenger said she would have allowed anyone, even a stranger, to remove car from scene, police were not required to offer alternatives to impoundment, and car lacked functional license plate lamp and thus could not have been driven legally from scene); see also Peete v. State, 678 N.E.2d 415 (Ind. Ct. App. 1997) (impoundment of automobile was proper exercise of community caretaking function, where all occupants of automobile were arrested, leaving no one to take control of automobile, and automobile had not been pulled tightly over to the curb, but rather, approximately four feet had been left between the curb and the passenger side tires, and impoundment was carried out pursuant to standard police operating procedures).

We further disagree with Belmar's claim that Officer Helton's inventory of his car did not comply with IMPD procedure. Belmar argues that Officer Helton failed to make a complete list of the property he found in Belmar's car, as required by IMPD policy. While Belmar is correct that Officer Helton failed to make an inventory list, this failure does not necessarily invalidate the inventory search. Officer Helton testified that the car was "pretty bare" and that he found nothing of value inside the car, other than the baggie of cocaine. Tr. p. 117. Since one of the purposes of inventorying the contents of an impounded car is to make a record of items of value found inside the vehicle in case any of those items are later lost or damaged, a lack of any items of value in the car justifies

8

the absence of an inventory list. See Peete v. State, 678 N.E.2d 415, 420 (Ind. Ct. App. 1997) (finding inventory search to be permissible even though officer made no inventory list, since nothing of value, other than a canister of cocaine, was found inside the vehicle during the search). Under these facts and circumstances, we conclude that Officer Helton's failure to make a written record of items inventoried in Belmar's car did not invalidate an otherwise permissible search.

Furthermore, Officer Tharp's statement to Officer Helton that he observed Belmar move his hand furtively toward the car's center console does not itself invalidate the inventory search. Officer Helton testified that he conducted the inventory search pursuant to IMPD procedure. Although Officer Helton stated that one of the reasons he searched the vehicle was to examine the item to which Belmar was gesturing, the fact that an inventory search may also have an investigatory motive does not invalidate the search. See United States v. Lomeli, 76 F.3d 146, 148 (7th Cir. 1996). See also Peete, 678 N.E.2d at 421 (Police officer's actions remained within the scope of a lawful inventory search, even though he reflected on arresting detective's observation of front seat passenger's furtive movements and took note of upright position of film canister under seat in which cocaine was found).

Therefore, under the facts and circumstances before us, and viewing the evidence in a light most favorable to the trial court's decision to admit the evidence, as we must, we cannot conclude that Belmar's rights under the Fourth Amendment were violated.

9

## B. Article I, Section 11

Article I, Section 11 of the Indiana Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated[.]" Our supreme court has stated that vehicles are among the "effects" protected by Article I, Section 11. Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995). Under Article I, Section 11, the validity of a search turns on an evaluation of the reasonableness of the officers' conduct under a totality of the circumstances. Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005). In determining whether the police behavior was reasonable under Section 11, we consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures. Brown, 653 N.E.2d at 79. The reasonableness of a search turns on a balance of "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield, 824 N.E.2d at 361. It is the State's burden to prove that the search was reasonable under the totality of the circumstances. Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001).

Belmar argues that Officer Helton's search of his vehicle was impermissible under the Litchfield factors because the violation for which Belmar was arrested did not "warrant having officers rummage through his car in hopes of obtaining incriminating contraband" and because the inventory search "was a significant intrusion on Belmar's ordinary activities." Appellant's Br. at 15. He further contends that the impoundment of

10

his car did not require an inventory search at the scene and that the search could have instead been conducted at the impound lot.

The evidence before us indicates that Belmar's car was left unattended and blocking the public's use of a gas pump in a gas station on a busy street. Belmar and his passengers were either under arrest or without valid drivers' licenses and were therefore unable to move the car. IMPD General Order 7.3 allows for an inventory search to be conducted at the scene of a traffic stop. Officer Tharp notified Officer Helton that he saw Belmar move his hand furtively toward the center console. And the search, which lasted only a minute or two, was minimally intrusive to Belmar who, at the time, was already in police custody.

Under these facts and circumstances, we cannot conclude that Belmar's rights under Article I, Section 11 of the Indiana Constitution were violated by the inventory search of his car.

**Conclusion**

Belmar waived his challenge to the admissibility of the evidence by failing to timely object. Waiver notwithstanding, Belmar has not established that the inventory search violated his Fourth Amendment and Article 1, Section 11 rights, and therefore the trial court did not abuse its discretion in admitting evidence of the cocaine found in Belmar's car.

Affirmed.

RILEY, J., and CRONE, J., concur.

11