Carls JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0603–CR–125.

Court of Appeals of Indiana.

Nov. 15, 2006.

Steven J. Halbert, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Carls Jones appeals his conviction for Class C felony carrying a handgun without a license. We affirm.

### Issue

Jones raises one issue, which we restate as whether a gun obtained during an inventory search of his car was properly admitted into evidence.

## Facts

On August 27, 2004, Jones was traveling northbound on Interstate 65, just north of downtown Indianapolis, when he made an illegal U-turn. Officer Keith Hartman observed Jones make the U-turn and made a traffic stop. Jones was not licensed to drive in Indiana and could not produce a valid license from another state. Officer Hartman issued a summons for Jones and told him that his car would be towed. Officer Hartman prepared to do an inventory search and asked Jones if there were any weapons in the car. Jones admitted that there was a handgun inside a cooler in the car. Officer Hartman conducted an inventory search and found the gun described by Jones.

On August 30, 2004, the State charged Jones with Class A misdemeanor carrying a handgun without a license and Class C felony carrying a handgun without a license based on a prior conviction. On January 26, 2005, Jones moved to suppress the evidence obtained during the stop, and his motion was denied. On January 13, 2006, after a bench trial, Jones was found guilty of the misdemeanor offense. On January 20, 2006, Jones admitted having a prior conviction, and the misdemeanor conviction was enhanced to a Class C felony. Jones now appeals.

## Analysis

■ On appeal, Jones argues that the gun was improperly admitted into evidence because the inventory search of his car was illegal.[1] "Rulings on the admission of evidence are subject to appellate review for abuse of discretion." *McHenry v. State*, 820 N.E.2d 124, 128 (Ind.2005).

■ Jones argues that the inventory search violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Under both, for a warrantless search to be reasonable, an exception to the warrant requirement must apply. *Taylor v. State*, 842 N.E.2d 327, 330–34 (Ind.2006). A valid inventory search is a recognized exception to the warrant requirement of the Fourth Amendment and Article 1, Section 11. *Id.* Jones argues that the gun was not obtained during a valid inventory search.

In support of his argument, Jones contends that our supreme court's decision in *Taylor* controls. Taylor drove his car into a gated apartment complex and did not use his turn signal. *Id.* at 329. A police officer observed this and initiated a traffic stop. *Id.* Taylor eventually "pulled his car diagonally against a curb in the complex parking lot." *Id.* The officer learned that Taylor was driving despite the suspension of his learner's permit and decided to have Taylor's car towed. *Id.* at 329–30. During an inventory search, the officer discovered two plastic baggies containing cocaine. *Id.* at 330.

Taylor moved to suppress the cocaine, and his motion was denied. *Id.* On appeal Taylor argued that the search violated his rights under the United States and Indiana Constitutions. *Id.* We affirmed the denial of the motion to suppress, and our supreme court granted transfer.

■ In addressing Taylor's Fourth Amendment argument, our supreme court observed that the rationale for the inventory search exception to the warrant requirement was threefold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. *Id.* at 330–31.

---

1. In his brief, Jones anticipates the State arguing that the search was valid for officer safety reasons. In its brief, the State specifically declines to make such an argument. Because the State did not make the argument, we do not address that issue.

"In determining the propriety of an inventory search, the threshold question is whether the impoundment itself was proper." *Id.* at 331.

> An impoundment is warranted when it is part of "routine administrative caretaking functions" of the police or when it is authorized by statute. To prove a valid inventory search under the community caretaking function, the State must demonstrate the following: (1) "the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing," and (2) "the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation."

*Id.* (citations omitted).

In *Taylor*, the State claimed that the impoundment was based on the officer's caretaking function and asserted that Taylor's car was illegally parked. *Id.* Assuming Taylor was illegally parked, our supreme court observed that not every vehicle illegally parked must be impounded, especially where the vehicle poses no potential hazard to public safety. *Id.* The court concluded that under those facts, there was no potential hazard to public safety simply because the car may have been parked illegally. *Id.* at 332. The court also rejected the State's arguments that impoundment was justified because Taylor did not live at the complex and because Taylor's license was suspended, he could not be allowed to operate his car further. *Id.* at 332–33. With regard to Taylor's inability to drive, the court reasoned that although Taylor could not have been permitted to move his car, the officers had no authority to arrest Taylor for the infraction and should have afforded him "the opportunity to telephone a responsible friend or relative to retrieve his car." *Id.* at 333.

The court concluded that the State "failed in its burden of demonstrating that the officers' belief that Taylor's vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing." *Id.* For this reason, the court held that the inventory search violated Taylor's United States and Indiana constitutional rights without determining whether the impoundment was consistent with established department routine or regulation. *Id.* at 333–34.

Regarding the first part of the community caretaking function test, the belief that the vehicle posed a threat or harm to the community, Jones argues that, as in *Taylor*, his car was not in an illegal location and did not pose a hazard to other drivers.[2] He asserts that this is evidenced by the fact that it is common to see vehicles parked on the side of the road and that he was detained on the side of the road for over an hour. He contends that pursuant to *Taylor*, the proper procedure was for a police officer to move his car or allow him to contact a friend or relative to move the car.

We cannot agree with Jones's suggestion that *Taylor* requires police officers to move a dangerously parked car themselves or to allow the driver to contact a friend to

---

2. In his brief, Jones points out that at trial the State did not argue that Jones's car posed a risk or hazard to anyone or that its removal was mandated by statute. Although this is true, Jones did not argue that the gun should have been suppressed because the impoundment and inventory search were invalid. Instead he argued that the stop was improper because there was no "no U-turn" sign posted at the location where he made the U-turn. We also note that *Taylor* was decided on February 14, 2006, after the conclusion of Jones's trial.

move the car. Although our supreme court does reference these options, the context of these references involved cars safely parked in parking lots or on private property, not cars parked on the paved shoulder of a highway. *See id.* at 332, 333.

Not only do we believe Jones's reading of the alternatives to impoundment mentioned in *Taylor* is too broad, we disagree with his assessment that his car did not pose a threat or harm to the community. The danger, here, is significantly different than that in *Taylor*. Unlike Taylor, who was parked in a parking lot on private property, Jones was stopped on the paved shoulder of a highway. Further, as the State points out, although Jones was stopped on the shoulder for over an hour, Officer Hartman's police cruiser was parked behind it, presumably with the emergency lights activated. The proximity of Jones's car to the fast moving traffic readily distinguishes this case from *Taylor*. We believe the location of the car on the paved portion of the highway did pose a threat or harm to the community and its removal was consistent with objective standards of sound policing.

■ Also, the impoundment is in keeping with established department routine or regulation, satisfying the second part of the community caretaking function test. *See Taylor*, 842 N.E.2d at 331. In the alternative, as the State argues, Officer Hartman was authorized by statute to remove the car.

Indiana Code Section 9–21–16–1 provides:

(a) This section does not apply to a person who drives a vehicle that is disabled while on the paved, improved, or main traveled part of a highway in a manner and to the extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle on the highway.

(b) A person may not stop, park, or leave standing an attended or unattended vehicle upon the paved or main traveled part of a highway outside of a business or residence district, if it is practicable to stop, park, or leave the vehicle off the highway.

Although Jones relies on this statute in support of his argument that he was permitted to park on the paved shoulder of the highway, we believe this statute is intended to prohibit an individual from stopping, parking, or leaving a vehicle on a paved portion of the highway unless the vehicle is disabled or he or she is doing so at the direction of a police officer. Further, "A person who violates this chapter commits a Class C infraction." Ind.Code § 9–21–16–9. Finally, Indiana Code Section 9–21–16–3 provides:

Whenever a police officer finds a vehicle standing upon a highway in violation of this chapter, the officer may require the person driving the vehicle or other person in charge of the vehicle to move the vehicle to a position off the paved, improved, or main traveled part of the highway. If:

(1) a person directed by an officer fails or refuses to move the vehicle; or

(2) the vehicle is unattended;

the officer may provide for the removal of the vehicle to the nearest available garage or other place of safety.

Thus, because Jones was not able to move the car himself, it appears that Officer Hartman was statutorily authorized to remove the vehicle. Such actions would also be in keeping with established department routine or regulation.

The impoundment was warranted as part of the community caretaking function and because it was authorized by statute. Because the impoundment was proper, the inventory search was a valid exception to

the warrant requirement of the Fourth Amendment. *See Taylor*, 842 N.E.2d at 331.

To show that the search was valid under the Indiana Constitution, the State must show that it was "reasonable in light of the totality of the circumstances." *Id.* at 334. For the reasons discussed above, namely that Jones's car was parked on the paved portion of an highway and not in a privately owned parking lot, its impoundment and the resulting inventory search were reasonable and consistent with the objective standards of sound policing. Jones's claims that his "detention and interrogation" were improperly broad in scope and lengthy in duration are unavailing. Appellant's Br. p. 9. The inventory search was proper under the Indiana Constitution.

### Conclusion

The gun obtained during an inventory search was properly admitted into evidence. We affirm.

Affirmed.

SULLIVAN, J., and ROBB, J., concurs.