## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Donald L. Poynter
Poynter & Bucheri, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Donald G. Orzeske
Beth L. Riga
Goodin Orzeske & Blackwell, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eddie Wilkerson,

*Appellant-Plaintiff,*

v.

Robert R. Carr and Lawyer Transport, Inc.,

*Appellees-Defendants.*

August 20, 2015

Court of Appeals Case No. 29A05-1410-CT-490

Appeal from the Hamilton Superior Court

The Honorable William J. Hughes, Judge

Trial Court Cause No. 29D03-0909-CT-1236

**Mathias, Judge.**

[1] Eddie Wilkerson ("Wilkerson") sued Robert Carr ("Carr") and Lawyer Transport, Inc., ("Lawyer Transport") (collectively "the defendants"), alleging that Carr and Lawyer Transport were liable for damages suffered by Wilkerson

after the vehicle Wilkerson was driving collided with the truck operated by Carr. A jury found in favor of the defendants, and Wilkerson now appeals, raising six issues on appeal, which we consolidate and restate as:

> 1) Whether the trial court abused its discretion in excluding testimony from one of Wilkerson's expert witnesses;
>
> 2) Whether the trial court abused its discretion in refusing to give the jury two of Wilkerson's proffered instructions;
>
> 3) Whether the trial court abused its discretion by giving the jury two of the instructions tendered by Carr and Lawyer Transport; and
>
> 4) Whether the trial court erred in failing to give the jury the verdict form tendered by Wilkerson.

We affirm.

## Facts and Procedural History

On October 1, 2007, Carr, who was a commercial truck driver employed by Lawyer Transport, was driving a flatbed truck transporting a forage harvester[1] southbound on Interstate 69 when he noticed that the discharge spout of the harvester had come loose from its binding and swung out to the side of the unit. Carr stopped his truck at the edge of the paved portion of the highway, then exited the truck cab to secure the discharge spout back into place. As he was doing so, Wilkerson, who was driving a box truck in the right-hand lane of the highway, veered outside of his lane and collided with the back of Carr's flatbed. Wilkerson was injured as a result of the collision.

---

[1] A forage harvester is a large piece of farm machinery also known as a "silage chopper." Appellant's App. p. 151.

On September 30, 2009, Wilkerson filed a complaint against Carr and Lawyer Transport, alleging that Carr was negligent in failing to ensure that the forage harvester was properly secured, in stopping on the side of the highway, and in failing to use warning devices to notify other drivers that he was stopped on the side of the road. Wilkerson also alleged that Lawyer Transport was negligent in entrusting the vehicle to Carr.

A jury trial was held from September 30, 2014 to October 2, 2014. Wilkerson sought to admit the report and testimony of his expert witness, Jay Nogan ("Nogan"), an engineer. Concluding that the report consisted largely of a mere recitation of federal regulations and that only small sections of the report were actually based on Nogan's expertise, the trial court excluded most of the report, as well as Nogan's testimony related to the excluded portions of the report. Wilkerson attempted to make an offer of proof on the report and testimony, but the trial court asked him to wait until the end of the trial to do so. At the end of the trial, Wilkerson failed to renew his request to make an offer of proof.

On October 3, 2014, the jury found in favor of the defendants, concluding that Wilkerson was sixty percent at fault for the collision and the defendants were forty percent at fault.

Wilkerson now appeals. Additional facts will be provided.

## I. Nogan's Expert Testimony

Wilkerson first argues that the trial court erred in excluding portions of Nogan's report and testimony. Generally, we review a trial court's decision to admit or

exclude evidence for an abuse of discretion. This standard also applies to decisions to admit or exclude expert testimony. We reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Norfolk S. Ry. Co. v. Estate of Wagers,* 833 N.E.2d 93, 100-01 (Ind. Ct. App. 2005) (citations omitted).

[9] Rule 702 of the Indiana Rules of Evidence provides as follows with regards to the admissibility of expert witness testimony:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

[10] The party seeking to admit expert testimony bears the burden of establishing the foundation and reliability of the scientific principles and tests upon which the expert's testimony is based. *Tucker v. Harrison,* 973 N.E.2d 46, 49 (Ind. Ct. App. 2012) (citing *McGrew v. State,* 682 N.E.2d 1289, 1290 (Ind. 1997)).

> In determining whether expert testimony is reliable, the trial court acts as a "gatekeeper" to ensure that the expert's testimony rests on a sufficiently reliable foundation and is relevant to the issue at hand so that it will assist the trier of fact. When faced with a proffer of expert scientific testimony, the court must make a preliminary assessment of whether the reasoning or

> methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* (citations and quotations omitted). To be admissible, an expert's opinion that an event caused a particular injury must be based on more than coincidence and supported by evidence in the record, establishing a standard of evidentiary reliability. *Norfolk,* 833 N.E.2d at 103.

[11] The trial court here issued an order granting in part the defendants' motion to exclude the testimony and report of Jay Nogan, concluding that (1) the report consisted largely of a recitation of relevant federal regulations and his opinion regarding the ways in which the defendants failed to comply with those regulations; (2) the only part of the report based on Nogan's expertise were the sections in which he outlined the procedures required to secure the machinery's discharge spout; (3) the report would not be admitted unless redacted; and (4) Nogan would be permitted to testify about those things already in the record before the court, but not about the excluded portions of the report. Appellant's App. p. 107.

[12] While Nogan may have a degree of knowledge of federal regulations related to the commercial transport of large machinery somewhat beyond that of ordinary lay jurors, his opinion regarding whether Carr and Lawyer Transport complied with those regulations was not necessarily helpful to the trier of fact. This is not a case where expert testimony was required to assist the jury in understanding a complex technical or scientific matter. Here, the jury was just as capable as

Nogan of reviewing the regulations and weighing the evidence presented to determine whether the defendants acted negligently, especially since the trial court allowed Nogan to testify about the steps necessary to secure the discharge spout.

[13] Therefore, we conclude that the trial court did not abuse its discretion in excluding in part Nogan's report and the related testimony. *See Roach v. State*, 695 N.E.2d 934, 940 (Ind. 1998) ("Considering that the substance of the offer to prove dealt with why a frightened individual might act and speak irrationally, the court may have felt that this evidence was within the jury's understanding and, thus, an expert witness would not assist the jury as is required by Rule 702"); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004) (the district court did not abuse its discretion by excluding portions of expert testimony regarding employee's ability to operate machinery; videotape could be played for jury and entered into evidence, thus allowing them to make determination for themselves with respect to employee's ability to run machine and, based upon this independent assessment, draw inferences regarding her ability to meet production levels.). *Cf. WESCO Distribution, Inc. v. ArcelorMittal Indiana Harbor LLC*, 23 N.E.3d 682 (Ind. Ct. App. 2014) *trans. dismissed*, 29 N.E.3d 1273 (Ind. 2015) (trial court did not abuse its discretion in admitting mill operator's expert testimony from mechanical engineer and electrical engineer as to whether fractured blowout coils caused braking system failure in crane while it was hoisting ladle of molten iron, which unexpectedly descended from its hoisted

position and tipped, igniting fire that caused extensive damage to mill; testimony was helpful in explaining to jury how incident could have happened).

## II. Wilkerson's Tendered Jury Instructions

Wilkerson next argues that the trial court erred in instructing the jury. The purpose of an instruction "is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Joyner-Wentland v. Waggoner,* 890 N.E.2d 730, 733 (Ind. Ct. App. 2008) (quoting *Estate of Dyer v. Doyle,* 870 N.E.2d 573, 581 (Ind. Ct. App. 2007)). We review a trial court's decision to give or refuse a tendered instruction for an abuse of discretion. *Id.* Upon review of a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by evidence in the record, and (3) is covered in substance by other instructions. *Id.* at 734.

Erroneous jury instructions need not result in reversal of a judgment. *Armstrong v. Federated Mut. Ins. Co.,* 785 N.E.2d 284, 287 (Ind. Ct. App. 2003), *reh'g denied, trans. denied* 804 N.E.2d 750 (Ind. 2003). Reversal is warranted only "upon an affirmative showing that the instructional error prejudiced the party's substantial rights." *Id.* at 289. If the verdict would not have been different, any error was harmless. *Id.* at 287.

*A. Tendered Instruction Number 3*

Wilkerson submitted to the trial court final instruction number 3, which contained 12 paragraphs quoting various redacted portions of the Code of

Federal Regulations ("CFR") related to motor carrier companies, the drivers they employ, and the operation of commercial motor vehicles. The final paragraph of the instruction stated, "[i]f you decide from the greater weight of the evidence that a person or entity violated any of these laws and that the violation was not excused, then you must decide that person was negligent." Appellant's App. p. 111. Wilkerson withdrew several paragraphs of the tendered instruction. The defendants objected to the remaining paragraphs contained in the instruction, arguing that they contained incomplete statements of the law and were redacted in a way that caused them to be misleading to the jury. The trial court agreed with the defendants and determined that the modified instruction tendered by Wilkerson contained incorrect and intentionally misleading statements of law.

[17]  Wilkerson contends that proposed instruction number 3 was a correct statement of law, in that the language came directly from the Code of Federal Regulations; that the evidence supports the giving of the instruction; and that the substance of the instruction is not covered by any other instruction. We agree with the trial court, however, that the instruction tendered by Wilkerson was redacted in a way that could reasonably be viewed as misleading to the jury. Specifically, it quoted a CFR requiring commercial vehicle drivers to periodically inspect their cargo and securement devices but omitted the section of the regulation that stated that the requirement did not apply in certain circumstances; it quoted language that cargo must be secured on the truck but omitted the rest of the sentence that read "to prevent the cargo from leaking,

spilling, blowing, or falling from the motor vehicle"; it included the quote "[c]argo must be contained, immobilized or secured" against shifting, but omitted the rest of the sentence, which read, "in accordance with this subpart to prevent shifting upon or within vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected"; and it included references to other sections of code without providing any language from those sections. Appellant's App. pp. 110-11, 130-36. The trial court reasonably concluded that the instructions placed undue emphasis on the particular language of the regulations that are helpful to Wilkerson's case, while omitting less helpful language in a way that could be misleading to the jury. Therefore, the trial court did not err in refusing the instruction as an incorrect statement of the law. *See Hartford Steam Boiler Inspection & Ins. Co. v. White*, 775 N.E.2d 1128, 1141-42 (Ind. Ct. App. 2002) (affirming trial court's refusal of tendered instructions where instructions included selected portions of the Code of Federal Regulations and placed excessive emphasis on particular sections to the exclusion of the remainder of the sections which were also applicable to the case).

[18] Wilkerson also argues that the trial court should have allowed him to "modify and retender this instruction" after rejecting it. Appellant's Br. at 16. Upon review of the record, however, we could not find any request by Wilkerson to modify and re-tender jury instruction number 3 subsequent to the trial court's refusal to give the instruction. In his reply brief, Wilkerson argues that the trial court "made it clear that it was unwilling to entertain further arguments"

regarding the tendered instruction and that Wilkerson made his "intention to submit a retendered instruction with the complete CFR's clear." Appellant's Reply Brief at 6. We disagree. The record reveals that, after the trial court rejected Wilkerson's instruction number 3 as an incorrect statement of the law, Wilkerson's counsel attempted to convince the trial court that the instruction was a correct statement of the law. However, nothing in the record indicates that Wilkerson's counsel directly requested an opportunity to modify and re-tender the rejected instruction. Wilkerson essentially argues, then, that the trial court should have *sua sponte* provided him the opportunity to re-tender the instruction when he made no specific request to do so. The law has no such requirement, and such an argument is unavailing on appeal.

*B. Tendered Instruction Number 7*

[19] Wilkerson also argues that the trial court erred in refusing his tendered instruction number 7 as a mandatory instruction.

[20] The instruction stated:

> When the events in this case happened, the following Indiana laws provided, in part, as follows:
>
> 1. (a) This section does not apply to a person who drives a vehicle that is disabled while on the paved, improved, or main traveled part of the highway in manner and to the extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle on the highway.
>
> (b) A person may not stop, park, or leave standing an attended or unattended vehicle upon the paved or main traveled part of a highway outside of a business or residence district, if it is

practical to stop, park, or leave the vehicle off the highway.  I.C. § 9-21-16-41(b)

2. "Highway" or "street" means the entire width between the boundary lines of every publicly maintained way when any part of the way is open to the use of the public for purposes of vehicular travel.  The term includes an alley in a city or town. I.C. § 9-13-2-73.

The location of a vehicle on the paved portion of a highway, including the paved shoulder of a highway, poses a threat or harm to the community.  Indiana Code § 9-21-16-1 prohibits an individual from stopping, parking, or leaving a vehicle on a paved portion of the highway unless the vehicle is disabled or he or she is doing so at the direction of a police officer.

Appellee's Br. at 19.

[21]    A mandatory instruction charges the jury that if it finds that a certain set of facts exists, it must render a verdict for a particular party. *Skaggs v. Davis,* 424 N.E.2d 137, 141 (Ind. Ct. App. 1981). Mandatory instructions are generally disfavored, and this court has cautioned that they not be used. *Northrop Corp. v. General Motors Corp.*, 807 N.E.2d 70, 103 (Ind. Ct. App. 2004). Here, the erroneous instruction was not a mandatory instruction because it neither set forth a factual scenario nor used mandatory language. Instead, it set forth general statements of law.

[22]    However, the instruction was properly rejected as an incorrect statement of the law. Specifically, the portion of the instruction that states "[t]he location of a vehicle on the paved portion of a highway, including the paved shoulder of a highway, poses a threat or harm to the community" is misleading to the jury and an impermissible editorial comment. The case on which Wilkerson bases

the statement, *Jones v. State*, 856 N.E.2d 758 (Ind. Ct. App. 2006), *trans. denied*, does not, as Wilkerson would have the jury believe, stand for the proposition that any vehicle located on the paved portion of the highway, under any circumstances, poses a threat or harm to the community. The facts of *Jones* are distinguishable from this case; in *Jones*, this court held that the impoundment and inventory search of a car abandoned on the side of a highway was permissible under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. Here, Carr quickly pulled his truck to the side of the highway so that he could exit the truck and re-secure part of his cargo that had swung loose.

[23] Furthermore, the jury in this case heard evidence regarding the relative safety of the location in which Carr pulled over and whether the location was marked as a shoulder or not. Wilkerson's counsel argued extensively during closing statements that it was not reasonable or safe for Carr to stop his truck where he did. Other instructions given by the trial court informed the jury that they were to find for the defendants if they decided that Wilkerson's fault for his injury was greater than fifty percent, that "a person using a road . . . is entitled to assume that others using the road will use reasonable care," and on the meaning of negligence, foreseeability, and reasonable care. Tr. p. 891. The jury was well aware of the theory Wilkerson sought to present through the instruction—that Carr was negligent in stopping his truck on the side of the highway—and still attributed the greater proportion of fault to Wilkerson.

Therefore, the trial court's refusal to give the proposed instruction was not an abuse of discretion.

## II. Defendants' Tendered Instructions

*A. Instruction Number 16*

[24] Wilkerson next argues that the trial court improperly tendered the defendants' final instruction number 16, over Wilkerson's objection:

> 16. When the events of this case happened, Indiana Code 9-21-8-14 provided as follows:
>
>> "A person who drives a motor vehicle may not follow another more closely than is reasonable and prudent, having due regard to the speed of both vehicles, the time interval between the vehicles, and the condition of the highway."
>
> If you decide from the greater weight of the evidence that one of the parties violated Indiana Code 9-21-8-14, and that the violation was not excused, then you must decide that person was negligent.

Appellant's Br. at 22-23.

[25] Wilkerson argues that "there was no evidence in the record to indicate that [he] was following another vehicle more closely than was reasonable and prudent," Appellant's Br. at 23, and, therefore, it was error for the trial court to give an instruction based on this theory.

[26] We note that a trial court may be justified in giving an instruction if any evidence supports the instruction. *R.R. Donnelley & Sons Co. v. N. Texas Steel Co.*,

752 N.E.2d 112, 139 (Ind. Ct. App. 2001). "If there exists any facts or circumstances in the case although quite meager, to which the instructions might, upon any view, be pertinent, it would not be error to give them, although they were so given to the jury over the objection of the complaining party." *R.R. Donnelley & Sons Co. v. N. Texas Steel Co.*, 752 N.E.2d 112, 139 (Ind. Ct. App. 2001)

[27]    While Wilkerson argues that no evidence in the record indicates that he was following too closely behind Carr's truck or any other vehicle, he testified that his view of Carr's truck was blocked by another vehicle until just before Wilkerson collided with Carr's truck. He also stated that the collision occurred after he looked away from the road for a moment to reach for his Mountain Dew soda. This evidence alone supports an inference that Wilkerson was following the vehicle in front of him too closely because a reasonable juror could conclude that, had Wilkerson been following at a safer distance, he would have seen Carr's truck pulled over at the side of the road, have seen that he had veered off of the traveled portions of the highway, and had sufficient time to avoid the collision. Under these facts and circumstances, the jury could, and did, conclude that Wilkerson was partially to blame for his injury by following too closely behind another vehicle. The trial court did not err in giving final instruction number 16.

*B. Instruction Number 18*

Wilkerson also argues that the trial court erred in giving final instruction number 18, tendered by the defendants. The instruction stated:

> You are instructed under the laws of the State of Indiana in determining whether an act or omission is negligent, the question must depend on whether or not an injury of some kind to some person could have been reasonably expected to result from such act or omission; reasonable care requires a person to anticipate and guard against what usually happens or is likely to happen, and a failure to do this may be negligence; but reasonable care does not require a person to foresee and guard against that which is not likely to occur, and a failure to do this is not negligence.

Appellee's Br. at 24.

Wilkerson contends that the instruction "is an incorrect statement of law because it is not based upon the model instructions and relies upon inapplicable case law." Appellant's Br. at 26. He argues that the facts in *Evans v. Schenk Cattle Co.*, 558 N.E.2d 892 (Ind. Ct. App. 1990), a case in which use of a similar instruction was affirmed by this court, are distinguishable from the facts of the present case because in *Evans* the injury to the plaintiff occurred on a farm as a result of a bulldozer becoming stuck in the mud, rather than as a result of a traffic accident on a highway. He maintains that because, in *Evans*, the defendants argued that the plaintiff's injury was foreseeable to the plaintiff since the plaintiff had encountered a similar experience in the past, the issue of foreseeability was different in *Evans* than it is here, and since in this case, "there

is no evidence in the record about breach of reasonable care in prior occasions," the instruction was given in error. Appellant's Br. at 28.

[30] We disagree. In *Evans*, this court affirmed the use of the instruction, noting that it "correctly informed the jury that the theory of negligence includes an element of foreseeability." *Evans*, 558 N.E.2d at 894. Importantly, this court also stated:

> We note the Evanses' argument that the instruction was irrelevant because it was based on *Alfano, supra,* which involved a dog bite and not the removal of a bulldozer from mud. We find no merit in this argument because the case was cited for the general proposition of law regarding foreseeability. No attempt was made to analogize the particular facts in *Alfano* with the facts in the present case.

*Id.*

[31] Here, as in *Evans*, the trial court used the instruction to generally inform the jury of the foreseeability element of the theory of negligence. Also, as in *Evans*, the trial court here did not analogize the facts in *Evans* with the facts in this case. Therefore, we conclude that the trial court did not abuse its discretion in delivering final instruction number 18.

## IV. Jury Verdict Form

[32] The final issue raised by Wilkerson is whether the trial court erred by giving the jury a verdict form that included two spaces for apportioning fault between Wilkerson and the defendants, rather than three spaces for apportioning fault between Wilkerson, Carr, and Lawyer Transport individually.

[33] Indiana Code section 34-51-2-11 provides: "The court shall furnish to the jury forms of verdicts that require only the disclosure of (1) the percentage of fault charged against each party and nonparty; and (2) the amount of the verdict against each defendant."[2] Wilkerson tendered a jury verdict form that included a space to allocate fault to Wilkerson, a space to allocate fault to Carr, and a space to allocate fault to Lawyer Transport. The verdict form given by the trial court, however, included only two spaces for allocating fault, one for Wilkerson and one for Carr and Lawyer Transport collectively. Wilkerson argues that he "should have been allowed to use a jury verdict form to attribute fault between Defendants Robert Carr and Lawyer Transport, Inc., similar to the verdict form utilized in [*Indian Trucking v. Harber*, 752 N.E.2d 168, 177 (Ind. Ct. App. 2001).]" Appellant's Br. at 29.

[34] Wilkerson's reliance on *Indian Trucking* is misplaced. In *Indian Trucking*, the plaintiffs filed a complaint against several defendants, including the driver of the car in which the decedent was a passenger, the driver, and the owner of the commercial truck that collided with the car in which the decedent rode, as well as the motor carrier that employed the commercial truck driver. The complaint named each of the defendants individually. On appeal, the defendants-appellants argued that the trial court erred in submitting jury verdict forms that provided only one space for an aggregate percentage of fault for all of the defendants. This court agreed, concluding that the record contained sufficient

---

[2] The Comparative Fault Act, Indiana Code section 34-51-2-1, provides for proportional allocation of fault, whereby each person whose fault contributed to the injury bears his proportionate share of the total fault.

evidence to support separate jury verdicts against each of the defendants individually.

[35] Here, however, were only two defendants, rather than several, and Wilkerson admitted that the jury could not find against Carr without also finding against Lawyer Transport:

> Court: Have you made any claim that I'm not aware of or I'm not thinking right now about where you claim that Robert Carr was negligent in this case in a manner or at fault in this case in a manner which would not result in Lawyer Transport being responsible under the admissions that have been made in this case? Is there any way that this jury could find against Robert?
>
> Counsel: Individually?
>
> Court: And not find against Lawyer Transport?
>
> Counsel: No.
>
> Court: Then I'm going to give the instructions that we've discussed and I'm not going to give separate ones for Lawyer Transport and Robert Carr. And this is my reason. I don't think it makes a difference unless it sets up the jury for error because the ultimate result is exactly the same either way we do it in this circumstance as it applies in this case.

Tr. p. 815.

[36] Wilkerson's counsel also agreed that, since they were proceeding under a theory of *respondeat superior*, regardless of how the jury might apportion fault between Carr and Lawyer Transport, the result would be the same for Wilkerson:

> Court: I understand that, that if this jury were to find, if this jury were to find, just as an example, 50 percent negligence by Mr. Wilkerson and 25 by Lawyer and 25 by Carr, 50/50, do you agree that you get money?

Counsel: Yes.

Court: Okay. Does the amount of money you get change . . . if it becomes 30/20?

Counsel: No.

Court: 40/10?

Counsel: No.

Tr. p. 813.

[37] Moreover, the trial court instructed the jury, without objection from Wilkerson, that "[i]f you find Robert Carr to have been negligent, you're instructed that as a matter of law the carrier and codefendent Lawyer Transport, Inc., . . . is liable as a matter of law for any wrongful conduct of the driver, Robert Carr." Tr. p. 892.

[38] Under these facts and circumstances, the verdict form given by the trial court was not improper, since all parties agreed that Carr could not be found liable without also finding Lawyer Transport vicariously liable, and once the jury decided the extent to which the defendants were jointly liable, any apportionment of fault between the defendants under these facts and circumstances would be immaterial and would only serve to waste time and confuse the jury. *See Utley v. Healy*, 663 N.E.2d 229 (Ind. Ct. App. 1996); *Evans*, 558 N.E.2d at 896.

[39] To the extent that Wilkerson claims that the jury's ultimate allocation of sixty percent fault to himself would have been different had the trial court included separate spaced for Carr and Lawyer Transport, we reject this argument as well.

No basis exists to believe that the jury would have found Wilkerson to be less negligent had it had the opportunity to allocate fault between Carr and Lawyer Transport. We therefore conclude that the trial court did not err in submitting the jury verdict forms.

## Conclusion

[40] For all of these reasons, we conclude that the trial court did not abuse its discretion in excluding testimony from Nogan, in refusing to give the jury two of the instructions tendered by Wilkerson, in giving the jury two instructions tendered by the defendants, or in failing to give the jury the verdict form tendered by Wilkerson.

Affirmed.

May, J., and Robb, J., concur.