## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 15 2019, 9:57 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

R. Jay Taylor, Jr.
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Teresa L. Todd
Indianapolis, Indiana

Richard P. Batesky, Jr.
Batesky Law Office
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rentokil North America, Inc., and Hunter Horne,

*Appellants-Defendants,*

v.

Brenda Hendricks,

*Appellee-Plaintiff.*

August 15, 2019

Court of Appeals Case No.
18A-CT-2731

Appeal from the Marion Superior Court

The Honorable David J. Dreyer, Judge

Trial Court Cause No.
49D10-1704-CT-16285

**Barnes, Senior Judge.**

# Statement of the Case

Brenda Hendricks sued Rentokil North America, Inc., and Hunter Horne (collectively "Rentokil") for negligence in connection with an auto accident involving Hendricks and Horne. The jury determined Rentokil was at fault and awarded Hendricks $250,000 in damages. Rentokil appeals, and we affirm.

# Issue

Rentokil raises three issues, which we consolidate and restate as: whether the trial court erred in its evidentiary rulings prior to and during trial.

# Facts and Procedural History

On the afternoon of September 13, 2016, Hendricks and Horne collided at the intersection of Troy Avenue and Brille Road in Marion County. Hendricks was driving east on Troy Avenue and had the right of way as she approached Brille Road. Hendricks slowed down to less than thirty-five miles per hour as she approached the intersection, but Horne drove into Hendricks' path. Hendricks swerved sharply to the left and used her brakes prior to striking Horne's car. Horne's automobile was owned by her employer, Rentokil, and she was acting within the scope of her employment at the time of the accident.

An ambulance arrived at the scene soon after the collision. Hendricks was in pain but declined to go to the hospital. She went to the hospital later that night after passing out and experiencing substantial pain and nausea. Doctors later

determined she sustained significant tissue damage to her right breast as a result of the collision. Some of the tissue damage is permanent.

[5] On April 24, 2017, Hendricks sued Rentokil, alleging: (1) Horne negligently caused the accident; and (2) Rentokil was responsible for her injury.[1] On August 15, 2017, the parties filed a proposed joint case management order. In the order, the parties agreed to procedures and deadlines for discovery disclosures. For reasons not explained in the record, the trial court clerk failed to place the order on the chronological case summary, and it was not transmitted to or signed by the trial court prior to trial.

[6] During discovery, Hendricks took a video deposition of one of her treating physicians, Nicholas Vornehm, M.D., intending to present the deposition at trial instead of live testimony. After the deposition, she filed a motion to strike in part Dr. Vornehm's recorded testimony. Specifically, Hendricks asked the court to exclude from evidence any theories by Dr. Vornehm about the speed at which Hendricks had been traveling at the time of the accident. Rentokil responded to the motion during a court hearing, and Hendricks filed a reply to Rentokil's response. The court granted Hendricks' motion. Rentokil filed a motion to reconsider, which the trial court denied.

---

[1] Hendricks also sued J.C. Erlich Co., Inc., but later stipulated to that party's dismissal from the case.

[7] The case was tried by jury over two days. Hendricks' theory of the case was that Rentokil was liable because Horne negligently failed to yield the right of way to Hendricks. By contrast, Rentokil argued Hendricks was at fault because she did not drive in a reasonable manner as she approached the intersection. Among other witnesses, Hendricks presented Dr. Vornehm's redacted video deposition and live testimony from Dr. Michael Lutz and Officer Joshua Kreutzberger. Dr. Vornehm and Dr. Lutz described Hendricks' injury and expressed expert opinions about the injury's cause, extent, and duration.

[8] On August 1, 2018, the jury returned a verdict for Hendricks, determining Rentokil was 100% at fault. The jury awarded Hendricks $250,000 in damages, and the trial court entered judgment in her favor. Rentokil filed a motion to correct error, to which Hendricks responded. The motion was deemed denied, and this appeal followed.

[9] On April 29, 2019, Hendricks filed with the trial court a motion to correct the chronological case summary to reflect that the parties had filed the proposed joint case management order on August 15, 2018. The court granted the motion and stated the proposed case management order had "governed the proceedings in this case." Appellee's App. Vol. 2, p. 13.

# Discussion and Decision

## 1. Standard of Review

[10] Rentokil challenges the trial court's decisions on the admission and exclusion of several witnesses' statements. We review a trial court's decision to admit or

exclude evidence, including expert witness testimony, for an abuse of discretion. *Wilkerson v. Carr*, 65 N.E.3d 596, 599 (Ind. Ct. App. 2015). A trial court abuses its discretion when its decision "is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* at 599-600. We presume the trial court's evidentiary decision is correct, and the party challenging that decision bears the burden of demonstrating an abuse of discretion. *5200 Keystone Ltd. Realty, Inc. v. Filmcraft Labs., Inc.*, 30 N.E.3d 5, 10 (Ind. Ct. App. 2015).

Even if an evidentiary decision is an abuse of discretion, we will not reverse if the ruling amounted to harmless error. *Kimbrough v. Anderson*, 55 N.E.3d 325, 334 (Ind. Ct. App. 2016), *trans. denied*. An error is harmless when the probable impact of the erroneously admitted or excluded evidence on the factfinder, in light of all of the evidence presented, is sufficiently minor so as not to affect a party's substantial rights. *Id.*

## 2. Dr. Vornehm

Rentokil concedes Dr. Vornehm was a qualified expert witness and does not dispute the admissibility of the doctor's opinions. Instead, Rentokil claims the trial court abused its discretion by striking the doctor's video deposition testimony about the speed at which Hendricks was driving at the time of the accident. Rentokil argues Dr. Vornehm was qualified to estimate the speed at which the accident occurred based on the severity of Hendricks' injury. By

contrast, Hendricks argues the doctor was qualified to discuss her injury but lacked the expertise required to offer an expert opinion on her driving speed.

[13] Indiana Evidence Rule 702 governs the admission of expert witness testimony, and it provides as follows:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

[14] An expert in one field of expertise cannot offer opinions in other fields absent a requisite showing of competency in that other field. *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), *trans. denied*. In addition, expert testimony admitted under Rule 702 requires more than subjective belief or unsupported speculation. *5200 Keystone*, 30 N.E.3d at 10. In *5200 Keystone*, the trial court barred an expert witness from expressing an opinion as to whether lessees had contributed to soil contamination on a piece of property after the witness conceded he did not know what chemicals the lessees had used in their businesses. The Court affirmed the exclusion of the testimony, concluding the expert's testimony was "pure speculation" because, although the expert was knowledgeable about environmental contamination issues, the expert lacked knowledge of facts specific to the case. *Id.* at 11.

[15]     Dr. Vornehm is a board-certified general surgeon and co-director of a critical care unit at a hospital. During Dr. Vornehm's video deposition, he stated on direct examination that Hendricks' injury was similar to injuries resulting from "high impact collisions." Tr. Ex. Vol., Rentokil's Ex. H, p. 7. On cross-examination, when the doctor was asked to explain what he meant by a "high impact collision," the following exchange occurred:

| | |
|---|---|
| [Dr. Vornehm] | I mean the – the force transferred to her chest on impact was significant. This was not a low impact or – or slow head-on collision. There has to be a certain amount of force, and I can't tell you the exact kinetics of it, the physics of it. But to sustain an injury that major, that soft tissue injury that major across the lap belt, across the shoulder, across the breast, in my clinical experience it's a significant rate of speed when that happens. |
| [Rentokil] | Can you be any more specific than using the word "significant"? [sic] Highway speeds? |
| [Hendricks] | Well, I'm going to object - |
| [Dr. Vornehm] | I don't know. |
| [Hendricks] | Excuse me, Doctor. I'm going to object to that for the reason that it's vague and ambiguous. You can answer the question if you can. |
| [Dr. Vornehm] | In my experience, you're talking about speeds 40, 45, 50 miles per hour and higher, not - |
| [Rentokil] | Okay. |
| [Dr. Vornehm] | - not 20 or 30 miles an hour or less. |

| [Rentokil] | Okay. |
|---|---|
| [Hendricks] | And we're going to move to strike the doctor's answer for the reason that he is not an expert on biomechanics, or a – nor has he seen the photographs depicting the damage to the vehicles in the wreck, nor does he have any other basis for giving an estimate as to the precise speeds of the vehicles. |

*Id.* at 34-35.

On redirect examination, the following exchange occurred:

| [Hendricks] | Doctor, do you have any medical training, or any other type of training or experience in order to determine the speed at which a vehicle was traveling, when you see a patient for an injury? |
|---|---|
| [Dr. Vornehm] | Just the experiences of – of seeing people come in the trauma bay after high speed motor vehicle accidents versus low speed ones. |
| [Hendricks] | So is – is your estimate as to the speed of a vehicle based on an injury an estimate? |
| [Dr. Vornehm] | It – it is.  It's just a rough, you know, low speed, high speed, you know, this – based on these injuries, this looks like it was high speed.  Just like the caliber of a bullet, or – or the velocity of a bullet when it hits somebody, it can cause a lot more damage when it's a higher caliber.  I – I'm not in forensics, I don't know – I don't understand all that, but I can oftentimes tell you, looking at the – the - the amount of tissue destruction, |

whether or not, you know, this was a high caliber or high velocity round.

[Hendricks]    Is it possible that if the evidence in this case indicates that Brenda's speed at impact was about 35 miles an hour, could that also produce the kind of trauma that she received to her breast?

[Dr. Vornehm]    It must have. If that was – if that's what – if that's what the speed was, then it must have. I'm surprised she was going – I'm surprised that that was the speed, though, I would have expected it to be greater.

*Id.* at 41-42.

[17] It is undisputed that Dr. Vornehm has no training in accident reconstruction, and he admitted that he had only a "rough" estimate of Hendricks' speed based on observing other patients' injuries. For purposes of Indiana Appellate Rule 702, he lacked the required specialized knowledge to provide opinions about vehicle speed and auto accidents. Further, Dr. Vornehm had not been given any information about the collision aside from Hendricks' injury. His opinion as to Hendricks' driving speed was thus based on speculation, much like the opinion of the expert witness in *5200 Keystone*. For these reasons, the trial court did not abuse its discretion by striking Dr. Vornehm's deposition testimony as to Hendricks' driving speed.

## 3. Dr. Lutz

[18] At the beginning of trial, Rentokil asked the court to bar Hendricks' witness Dr. Michael Lutz from stating any expert opinions, claiming Hendricks had failed

to disclose during discovery that Dr. Lutz would serve as an expert witness as well as a fact witness. The trial court overruled Rentokil's objection.

[19] Rentokil argues the trial court abused its discretion in allowing Dr. Lutz to express expert opinions at trial because Hendricks had failed to timely disclose that Dr. Lutz would be an expert. Hendricks disagrees, responding that she fulfilled her disclosure obligations.

[20] During the discovery process, parties are entitled to discover "facts known and opinions held by experts." Ind. Trial Rule 26(B)(4). Specifically, a party may issue interrogatories requiring any other party to:

> identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

*Id.*

[21] The Indiana Trial Rules also permit the parties to agree to modify their discovery obligations: "Unless the court orders otherwise, the parties may by written stipulation . . . modify the procedures provided by these rules for other methods of discovery." Ind. Trial Rule 29. A stipulation of facts is an express waiver by a party or counsel of the intended issues. *Ind. Dep't of Envtl. Mgmt. v. Adapto, Inc.*, 717 N.E.2d 646, 650 (Ind. 1999).

On August 15, 2018, the parties filed a proposed joint case management order, in compliance with Marion County's local rules. *See* LR49-TR-16 Rule 207(B) ("Within ten (10) days after [a parties' case management conference] those attending are to file a Joint Case Management Order . . . ."). The proposed order, which both parties signed, states in relevant part:

> Trial Rule 26(B)(4) Expert Disclosures
>
> The parties agree that they will file their Trial Rule 26(B)(4) expert disclosures no later than 120 days prior to trial. After receiving each other's expert disclosures, the parties will have an additional sixty (60) days to file any additional expert disclosures.
>
> By "expert disclosures", [sic] the parties mean that they will provide each other with the names of any expert witnesses they plan to use to testify in this case other than the plaintiff's treating physicians, and with regard to each expert, a statement as to the general nature of their testimony and a statement of the opinions they will be rendering in the case. However, no expert disclosures will be required relative to the Plaintiff's treating physicians or other treating health care providers.

Appellee's App. Vol. 2, p. 6.

We now turn to Rentokil's discovery requests. Rentokil issued one interrogatory addressing expert witnesses, and Hendricks responded, as follows:

> INTERROGATORY NO. 18: State the name, address and telephone number of each person you or your attorney consulted with or intend to call as an expert witness at trial of this cause. and for each expert, please state the expert's general area of expertise; the subject matter on which the expert will testify at trial; the present occupation, address, and telephone number of each such expert witness; the schooling, training, and experience

which you believe qualifies this person as such an expert (alternatively, attach a copy of the current curriculum vitae of said expert); a summary of the expert's expected testimony, including the substance of facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

ANSWER: My attorneys advise me that at this point in time, they have not consulted with any experts.

My attorneys also advise me that a determination has not yet been made as to all of the expert witnesses who may be called to testify at trial. However, they tell me that they anticipate that the doctors, physician's assistants, nurse practitioners, physical therapists, occupational therapists, and other health care providers who have treated me both before and after the collision in which Hunter Horne and I were involved will give testimony which will include the history and symptoms that I have reported to them; their examination findings; the results of x-rays, MRI scans, CT scans and other diagnostic tests; their diagnoses for my symptoms and injuries; the treatment they rendered to me; their opinions as to the causal connection between the collision in which Hunter Horne and I were involved and the injuries and symptoms for which I have been treated since that wreck; their opinions as to the impact my injuries have had on my ability to do my normal daily activities; the impact my injuries have had on my ability to work and the time I have missed from work as a result of my injuries; their opinions as to the prognosis for my injuries; their opinions as to any permanent symptoms, problems with activities, impairment and/or disability which I am going to have as a result of my injuries; the medical treatment that I am going to require in the future as a result of my injuries; their opinions as to the effect my injuries will have on my ability to work in the future, including time I may miss from work in the future due to my injuries, the effect my injuries will have on the kind of work I can do, and my work life expectancy; the cost of the treatment that they have rendered to me to-date; and, the cost

of the future medical treatment that I am going to require as a
result of my injuries.

Appellants' App. Vol. 2, pp. 59-60.

[24] Rentokil claims Hendricks was required to identify Dr. Lutz by name and disclose other pertinent information about his expert testimony. We disagree. The proposed joint case management order explicitly releases Hendricks from any obligation under Indiana Trial Rule 26(B)(4) to make expert witness disclosures about her treating physicians. Hendricks fulfilled her responsibilities by stating, in response to Rentokil's interrogatory, that her treating physicians may offer expert opinions at trial. Rentokil could have taken Dr. Lutz's deposition to clarify the nature of his testimony.[2]

[25] Rentokil further claims the proposed joint case management order "controlled no aspect of the case" because it was not signed and issued by the trial court. Reply Br. p. 19. In support of its claim, Rentokil cites Trial Rule 16(J), which states that a pre-trial order "control[s] the subsequent course of action" "when entered" by the court. There is no dispute that the parties timely filed the order, but it was not placed on the chronological case summary or transmitted to the trial judge for reasons not provided in the record. After this appeal began, the

---

[2] We acknowledge that in Hendricks' discovery responses, she identified seven treating physicians, including Dr. Vornehm and Dr. Lutz, as potential trial witnesses. Upon discovering Hendricks had received treatment from a relatively large number of physicians, Rentokil could have asked Hendricks to revise their proposed joint case management order to provide more specific expert witness information. Rentokil also could have asked the trial court to address the issue.

trial court issued an order clarifying that the parties' proposed joint case management order had "governed the proceedings in this case." Appellee's App. Vol. 2, p. 13. The court did eventually sign the order.

In any event, regardless of whether the trial court timely signed and issued the proposed order, Rentokil signed and jointly filed the order, and it agreed to be bound by its terms, as a stipulation. *See Adapto, Inc.*, 717 N.E.2d at 650 (a party entered into a stipulation as to the sole issue remaining to be tried and was barred from later attempting to add new issues). The first day of trial was too late to change its position. The trial court did not abuse its discretion by allowing Dr. Lutz to present expert testimony at trial.

## 4. Officer Kreutzberger

Officer Joshua Kreutzberger of the Indianapolis Metropolitan Police Department was dispatched to investigate the parties' accident and prepared a report. He testified at trial. Rentokil claims the trial court abused its discretion because the court allowed Officer Kreutzberger to state an expert opinion at trial, even though: (1) Hendricks had not previously identified him as an expert witness; and (2) the officer was not qualified to offer opinions in relation to the cause of the accident. Hendricks claims, without citation to authority, that the officer's testimony was admissible because it was not opinion testimony, but rather a description of the facts and circumstances of the case.

As noted, experts "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier

of fact to understand the evidence or to determine a fact in issue." Ind. Evid. Rule 702. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue." Ind. Evid. Rule 704. The cause of an automobile accident is a type of ultimate issue. *See State v. Bouras*, 423 N.E.2d 741, 745 (Ind. Ct. App. 1981) (state trooper deemed competent to state expert opinion on cause of car accident).

[29] Rentokil challenges the following portion of Officer Kreutzberger's testimony:

| [Hendricks' Counsel] | And did your investigation reveal anything that Brenda Hendricks did that caused or contributed to cause the wreck.[sic] |
| --- | --- |
| [Rentokil's Counsel] | Objection, inappropriate opinion and undisclosed opinion. |
| [Hendricks' Counsel] | Your Honor, I'm asking him if his investigation revealed any facts that indicated that Brenda did anything wrong that caused or contributed to cause the wreck. |
| The Court: | Overruled, he can answer. |
| [Ofc. Kreutzberger] | No Ma'am. |

Tr. Vol. 2, p. 40.

[30] This excerpt demonstrates that Hendricks asked Officer Kreutzberger to give his opinion on an ultimate issue of fact, namely the cause of the accident. This question necessarily called upon specialized training and expertise in accident investigation. We reject Hendricks' claim that the officer was merely testifying

about facts because we conclude the officer was instead presenting an expert opinion. *See Bouras*, 423 N.E.2d at 746 (trooper's conclusion about the cause of the accident was an expert opinion, based on experience and training).

[31] We thus turn to Rentokil's challenges to Officer Kreutzberger's expert testimony. We disagree with Rentokil's claim that the officer was not qualified to express expert opinions on the cause of auto accidents. Officer Kreutzberger had been a patrol officer for over two years at the time of the accident. He has an associate's degree in applied science, with coursework designed for a career in law enforcement. Officer Kreutzberger spends thirty percent of his day dealing with auto accidents and has investigated "hundreds" of them. Tr. Vol. 2, p. 38. This is sufficient evidence to establish the officer as having specialized training and knowledge about accident investigation. *See Bouras*, 423 N.E.2d at 746 (trooper qualified as expert on accident investigation; was trained by the state and had two years of experience investigating accidents).

[32] On the other hand, it is undisputed that Hendricks did not disclose Officer Kreutzberger as a potential expert witness prior to trial, despite Rentokil's interrogatory requesting such disclosures, and Rentokil unsuccessfully objected to the officer's testimony on the cause of the crash as an "undisclosed opinion." Tr. Vol. 2, p. 40. A trial court has broad discretion to determine appropriate sanctions for a party's failure to comply with discovery orders. *Carter v. Robinson*, 977 N.E.2d 448, 455 (Ind. Ct. App. 2012), *trans. denied*. Absent clear error and resulting prejudice, the trial court's determinations with respect to violations and sanctions should not be overturned. *Id.*

[33] In *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 136 (Ind. 2005), a police officer investigated a collision involving a bicyclist that had been hit by a car. The officer testified that the driver was not at fault for the accident. The Indiana Supreme Court determined the trial court erred in allowing the officer to testify as an expert witness because the party presenting the officer's testimony had failed to establish that the officer qualified as an expert. The Supreme Court further determined that admission of the officer's testimony as to the cause of the accident was harmless because: (1) the officer's opinion was based on what the parties to the accident told him; and (2) the officer did not claim expertise in accident reconstruction. *Id.*

[34] In the current case, Officer Kreutzberger's investigation of the accident largely consisted of discussions with Hendricks and Horne. During his testimony, he did not describe inspecting the cars or the intersection. As Rentokil acknowledged, the officer's conclusions were based on "what the parties told him had happened." Appellants' Brief, p. 31. In addition, Officer Kreutzberger testified that he had investigated hundreds of auto accidents, but he did not tell the jury he was an expert in accident reconstruction. We conclude, as the *Witte* court concluded, that admission of Officer Kreutzberger's comment about causation was harmless error at best. As a result, in the absence of prejudice, the trial court did not abuse its discretion by permitting the officer's testimony.

## Conclusion

[35] For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Bailey, J., and Mathias, J., concur.